IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Kevin M. Waggle and | : | |
| Linda Ann Waggle and | : | |
| Salvatore Russo as trustee | : | |
| | : | |
| v. | : | No. 64 C.D. 2018 |
| | : | Submitted: April 11, 2019 |
| Woodland Hills Association, Inc. | : | |
| | : | |
| Appeal of: Kevin M. Waggle | : | |
| and Linda Ann Waggle | : | |

BEFORE:     HONORABLE MARY HANNAH LEAVITT, President Judge
            HONORABLE MICHAEL H. WOJCIK, Judge (P.)
            HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT                              FILED: July 10, 2019

Kevin M. and Linda Ann Waggle (collectively, Waggles) appeal an order of the Court of Common Pleas of Wayne County (trial court) granting Woodland Hills Association, Inc.'s (Association) request for a clarification of the parties' Settlement Agreement and holding the Waggles in contempt of court. The trial court held that the Settlement Agreement required the Waggles to share in the cost for capital improvements to common areas in a planned community and for liability insurance on a shared boat dock. On appeal, the Waggles argue that the trial court erred in its construction of the Settlement Agreement. They further contend that the trial court's interpretation of the Settlement Agreement effected an unauthorized modification of the agreement. For the reasons to follow, we affirm the trial court.

## Background

Woodland Hills is a planned community located on Lake Wallenpaupack in Wayne County, Pennsylvania. The Association maintains the Woodland Hills common areas, including the roads and boat docks, and imposes fees upon residents to fund this work.

In 2005, the Waggles purchased a slip at Woodland Hills' boat dock. In 2008, a dispute arose between the Waggles and the Association about whether the Waggles were members of the Association or entitled to own a slip at the boat dock. In 2009, the Waggles filed a declaratory judgment action to establish that they were not members of the Association and did not need to be in order to own a boat slip.[1] In 2013, the parties resolved their dispute with a Settlement Agreement that, *inter alia*, established that the Waggles, albeit not members of the Association, were entitled to keep their boat slip and to vote on discrete issues. In return, they had to pay a proportionate share of the costs related to common areas, the boat docks, and the community's water system. Reproduced Record at 28a-49a (R.R. __).[2] On October 22, 2013, the trial court entered an order approving the Settlement Agreement.

In May 2015, the Waggles filed a petition for contempt against the Association. The petition alleged that the Association had failed to provide liability insurance on their boat slip in accordance with the Settlement Agreement and had not correctly calculated their 2015 Association and dock fees.

---

[1] The factual and procedural history of this dispute is set forth in this Court's opinion in a prior appeal. *See Waggle v. Woodland Hills Association, Inc.* (Pa. Cmwlth., No. 1264 C.D. 2011, filed August 20, 2012) (unreported).

[2] The Settlement Agreement also involved Salvatore Russo; the Waggles and Russo are collectively referred to as "Plaintiffs" in the Settlement Agreement.

In October 2016, the Association filed a cross-petition for contempt, alleging that the Waggles had not paid their 2015 and 2016 Association fees. In addition, the Association sought a clarification that the Settlement Agreement required the Waggles to share in the expense of maintaining the facilities they used, including the roads and the boat dock. The Association asserted that maintenance of the roads included their resurfacing, when needed.

On January 24, 2017, the trial court ordered the Waggles to pay, within 30 days, $1,470.24, which represented the total of the Association's 2015 and 2016 assessments on the Waggles. Additionally, the trial court scheduled a hearing on the Association's petition for clarification of the Settlement Agreement and directed the parties to submit memoranda of law on what constitutes a maintenance expense as opposed to a capital improvement expense.

On February 21, 2017, the trial court conducted a hearing on the Association's contempt petition. At the hearing, the Waggles acknowledged that they had not paid the $1,470.24. Their counsel explained that he

> wouldn't like them, necessarily, to pay it before [they] had a judicial determination on that, 'cause it does include, from what we believe to be, a capital improvement in the form [of] the levelling, the blacktopping, etc.

Notes of Testimony (N.T.), 2/21/2017, at 92; R.R. 238a. Their counsel also stated, "I'm just asking that we give [the Waggles] additional time on that portion, until we conclude the case." *Id*.

On March 7, 2017, following the hearing, the trial court entered the following order:

> (1) As to streets, roads and/or traffic ways of which Non-Members of the [Association] are permitted to use, [the]

3

Waggle[s] shall pay their proportionate share of maintenance expenses.

We hold specifically that streets, roads and/or traffic ways, and transportation capital improvements are deemed to be improvements which have a life expectancy of three years or more, not including costs for maintenance, operation or repair. See In re: Maibach, LLC, 25 A[.]3d 1214 (Pa. Cmwlth[.] 2011).

(2) In general capital improvements shall constitute building and/or construction of which according to Internal Revenue Service law and/or regulations would be required to be treated for tax purposes as capital improvements.

Order, 3/7/2017, at 1; R.R. 242a.

The Association construed this order to mean that its road leveling[3] project in Woodland Hills constituted a maintenance expense. The Waggles, however, construed the order to mean that the Association's road leveling project was a capital improvement because it would extend the life of the road for more than three years.

On July 27, 2017, the Association filed another contempt petition against the Waggles, alleging that they had not paid the entire $1,470.24, as ordered by the trial court on January 24, 2017. The Waggles still owed approximately $300.[4] Contemporaneous with its petition for contempt, the Association petitioned for a clarification of the trial court's March 7, 2017, order, to resolve the remaining issues between the Association and the Waggles.

On November 15, 2017, the trial court held a hearing on the Association's petition. At the hearing, counsel for the Waggles acknowledged that

---

[3] A leveling course is a layer of asphalt spread on the surface of existing roads. N.T., 2/21/2017, at 31; R.R. 177a.

[4] It is not clear whether the amount owed by the Waggles was $300.12 or $300.24; therefore, for purposes of this opinion, we will round the amount owed to $300.

4

they had withheld $300 from the $1,470.24 owed to the Association. Counsel explained that

> when the Court issued its Order back [in] January of 2017, the Court directed the Waggle[s] … to pay $1,470.2[4] for Association dock dues for 2015 and Association dock and water dues for 2016. Now at that same time in that January Order the Court indicated that it would be entertaining the Association's request for clarification of the Settlement Agreement with the implication being that the Court would issue another Order clarifying the Settlement Agreement … which the Court did on March 7, 2017. So in this March 7, 2017 Order the Court clarifies that the Waggle[s] … are required to pay their proportionate share of maintenance expenses of those streets, roads and traffic ways that they are permitted to use, and *that they're not required to pay capital improvement costs for the streets, roads and traffic ways*. And then the Court goes on to say that if you want to know what a capital improvement is you should look at the IRS law and IRS regulations. So, a part of the $1,470.2[4] that the Waggle[s] … were directed to pay, it turns out, is for capital improvements specifically that $300[] is for a levelling course and special projects.

N.T., 11/15/2017, at 9-10; R.R. 277a-78a (emphasis added). In short, the Waggles construed the trial court's March 7, 2017, order to mean that the resurfacing, or "leveling," of existing roads in Woodland Hills constituted a capital improvement for which they were not responsible. Thus, they withheld payment of $300 out of the $1,470.24.

On December 12, 2017, the trial court entered an order holding the Waggles in contempt for not paying the entire amount of $1,470.24 they had been ordered to pay. Additionally, the trial court stated as follows:

> a. Section 6 of the Settlement Agreement is clarified to provide that Plaintiffs … are required to pay their proportionate share of any costs and expenses incurred by [the Association] to complete maintenance fees under the Settlement Agreement.

5

b.      Section 6 of the Settlement Agreement is clarified to provide that *Plaintiffs … are required to pay [the Association] their proportionate share of costs incurred to complete capital improvements to facilities that Plaintiffs have the right to use and enjoy including but not limited to roads*, under the definition set forth in the Internal Revenue Services' laws and regulations, including the specific costs identified in [the Association's] 2016 Road Budget and other projects that are designated "Special Projects" or "Special Repairs" when those "Special Projects" or "Special Repairs" relate and/or occur to facilities that Plaintiffs have the right to use and enjoy under the settlement agreement; and

c.      Section 8 of the Settlement Agreement is clarified to provide that Plaintiffs … are required to pay [the Association] their proportionate share of costs incurred by [the Association] for the purpose of obtaining and maintaining comprehensive and/or liability insurance for the docks, so long as the above named Plaintiffs respectively continue to own entitlement rights for boat slips on the docks which are owned and managed by [the Association].

In the case of an insurer's premium be[ing] higher based on non-members use as previously was the case, the above named Plaintiffs shall proportionately pay for such additional insurance premium costs.

Order, 12/12/2017, at 2-3 (emphasis added). In sum, the trial court construed the Settlement Agreement to obligate the Waggles to pay their proportionate share of the Association's expenses to improve or maintain any common facility that the Waggles were entitled to use, without regard to whether that expense constituted a capital improvement. The Waggles filed the instant appeal.

6

**Appeal**

On appeal,[5] the Waggles raise three issues. First, they contend that the trial court erred in holding them in contempt of the order of January 24, 2017, because they did not act with wrongful intent in not paying the fees imposed for road leveling. Second, they contend that the trial court's order of December 12, 2017, modified its prior orders of March 7, 2017, and October 22, 2013, and the trial court lacked jurisdiction to do this because more than 30 days had elapsed after the entry of the earlier orders. Third, they contend that the trial court erred in its construction of the Settlement Agreement, which exempted them from any responsibility for capital improvements to the roads and did not require them to pay separate fees for dock insurance. We consider the issues *seriatim*.

## I. Contempt of Order of January 24, 2017

In their first issue, the Waggles contend that the trial court erred in holding them in contempt of its order of January 24, 2017. The Waggles acknowledge that they withheld $300 from the total of $1,470.24 they were ordered to pay. They argue that because they did not act with wrongful intent, they cannot be found in contempt of court.

---

[5] When reviewing an appeal from a contempt order, this Court's scope of review is to determine "whether the trial court abused its discretion or committed an error of law." *West Pittston Borough v. LIW Investments, Inc.*, 119 A.3d 415, 421 n.9 (Pa. Cmwlth. 2015) (quoting *Department of Environmental Resources v. Gentile*, 683 A.2d 711, 712 (Pa. Cmwlth. 1996)). In addition, a challenge to jurisdiction raises a question of law. Thus, our standard of review is *de novo*, and our scope of review is plenary. *Kalmeyer v. Municipality of Penn Hills*, 197 A.3d 1275, 1279 (Pa. Cmwlth. 2018). Finally, when reviewing a trial court's order interpreting a settlement agreement, this Court's scope of review determines whether the trial court committed an error of law or abused its discretion. *Mellish v. Hurlock Neck Duck Club, Inc.*, 886 A.2d 1151, 1157 n.11 (Pa. Cmwlth. 2005).

Courts have inherent power to enforce their orders through the power of contempt. *West Pittston Borough*, 119 A.3d at 421. In civil contempt proceedings, the moving party has the burden to prove noncompliance by a preponderance of the evidence. *Barrett v. Barrett*, 368 A.2d 616, 621 (Pa. 1977). Mere noncompliance with a court order is not by itself sufficient to prove contempt; rather, the complaining party must prove:

> (1)　That the contemnor had notice of the specific order or decree which he is alleged to have disobeyed;
>
> (2)　That the act constituting the contemnor's violation was volitional; and
>
> (3)　That the contemnor acted with wrongful intent.

*West Pittston Borough*, 119 A.3d at 421 (emphasis omitted) (quoting *Epstein v. Saul Ewing, LLP*, 7 A.3d 303, 318 (Pa. Super. 2010)). "Civil contempt may be proved by circumstantial evidence and logical inference from other facts." *Holtzapple v. CJD Group, LLC* (Pa. Cmwlth., No. 1114 C.D. 2017, filed October 31, 2016), slip op. at 6 (unreported)[6] (citing *Commonwealth v. Reese*, 156 A.3d 1250, 1258 (Pa. Super. 2017)). Wrongful intent can be inferred from circumstantial evidence. *Id.*

The order of January 24, 2017, required the Waggles to pay the Association $1,470.24 in 30 days. They did not do so. The Waggles acknowledge notice of this order and that they did not make full payment. However, the Waggles contend that they did not act with wrongful intent, which is necessary to a finding of civil contempt.

In support, the Waggles observe that the order of January 24, 2017, directed the parties to submit briefs on the difference between maintenance expenses

---

[6] An unreported panel decision of this Court, "issued after January 15, 2008," may be cited "for its persuasive value[.]" 210 Pa. Code §69.414(a).

and capital improvements, on which the trial court heard oral argument. Thereafter, on March 7, 2017, the trial court issued an order holding "streets, roads and/or traffic ways, and transportation capital improvements are deemed to be improvements which have a life expectancy of three years or more[.]" Order, 3/7/2017, at 1; R.R. 242a. The Waggles interpreted the March 7, 2017, order as not requiring them to pay for road-related capital improvements. For this reason, the Waggles contend that they did not act with wrongful intent by not paying the remaining $300.

The Association responds that the Waggles did not seek a clarification or reconsideration of the trial court's orders of January 24, 2017, or March 7, 2017. At the hearing of February 21, 2017, the Waggles requested permission not to pay the disputed amount, but the trial court denied the request. The Association contends that the Waggles' conduct demonstrates that they acted with wrongful intent in not complying with the January 24, 2017, order. We agree.

The trial court's March 7, 2017, order did not relieve the Waggles of their obligation to make payment of $1,470.24, and it did not hold that road leveling was a capital improvement. The order stated that the line between a capital improvement and a maintenance expense was to be drawn in accordance with federal tax law, thereby disposing of one of the issues on which the Association had sought clarification. Although the Waggles believed the new layer of asphalt installed in the road leveling project would have a lifespan of five years, they offered no evidence to support this belief.

The order of January 24, 2017, required the Waggles to pay $1,470.24 within 30 days, and they did not comply. This Court has explained that "[w]rongful intent can be inferred where it is clear from the language of the court order that the conduct in question violates the court order and the evidence shows that the

9

contemnor knowingly failed to comply." *Holtzapple*, slip op. at 6 (citing *Reese*, 156 A.3d at 1258-60; *Commonwealth v. Lambert*, 147 A.3d 1221, 1227 (Pa. Super. 2016)). Here, there is no air in the trial court's order to pay $1,470.24, and the Waggles "knowingly failed to comply." This supports an inference of wrongful intent.

## II. Trial Court's Jurisdiction to Issue December 12, 2017, Order

The Waggles challenge the trial court's jurisdiction to issue the December 12, 2017, order purporting to clarify the Settlement Agreement. The Waggles contend that the trial court's so-called "clarifications" added language to the Settlement Agreement, and in doing so the trial court actually modified its prior orders of March 7, 2017, and October 22, 2013. They argue that because more than 30 days had passed from the date of those orders, the trial court lacked jurisdiction to modify them. The Association responds that the trial court did not modify its prior orders but only clarified and enforced them, and it had the authority to do so.

The Waggles rely upon Section 5505 of the Judicial Code for their argument that the trial court lacked authority to issue its order of December 12, 2017. Section 5505 states as follows:

> Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed.

42 Pa. C.S. §5505. The Association responds that the Waggles did not raise the Section 5505 issue by not raising it before the trial court and, in any case, Section 5505 is irrelevant because it applies only to final orders.

10

We reject the Association's contention that the Waggles waived their Section 5505 argument. The Waggles challenge the trial court's jurisdiction, which is a non-waivable issue. *Maurice A. Nernberg & Associates v. Coyne*, 920 A.2d 967, 970 n.7 (Pa. Cmwlth. 2007). However, we reject the Waggles' Section 5505 argument on the merits.

Although styled as a "petition for clarification," the Association's petition sought to enforce the Settlement Agreement, which had been incorporated into the trial court's October 22, 2013, order. "Courts routinely are called upon to enforce consent orders they have issued upon later claims that parties have not fulfilled their obligations under them." *Pennsylvania Higher Education Assistance Agency v. Lal*, 714 A.2d 1116, 1118 (Pa. Cmwlth. 1998). Passage of time does not divest a trial court of jurisdiction to enforce its order. *See Kalmeyer v. Municipality of Penn Hills*, 197 A.3d 1275, 1280 (Pa. Cmwlth. 2018). *See also* 42 Pa. C.S. §323 (courts have power to enforce their orders). In fact, this Court has recognized that "[j]urisdiction to enforce settlement terms that are incorporated into a court order can continue to exist [for] years[.]" *Kalmeyer*, 197 A.3d at 1280 (citing *Pennypack Woods Home Ownership Association v. Regan*, 444 A.2d 715, 716 (Pa. Super. 1982) (trial court retained jurisdiction to enforce settlement entered as consent decree 10 years earlier)).

In sum, the trial court had authority to enforce its October 22, 2013, order, which incorporated the parties' Settlement Agreement. The trial court's order of December 12, 2017, did not violate Section 5505 of the Judicial Code.

11

### III. Trial Court's Construction of Settlement Agreement

### a. Section 6 of the Settlement Agreement

The Waggles argue that the trial court materially altered the Settlement Agreement by holding that they must pay a "proportionate share of costs" incurred by the Association "to complete capit[a]l improvements to facilities that [they] have the right to use[.]" Order, 12/12/2017, at 2. They argue that Section 6 of the Settlement Agreement obligates then to pay for capital improvements only to the docks and water system. The Association responds that the Settlement Agreement, when read in its entirety, requires the Waggles to "pay their share of capital improvement costs for facilities that they had the right to use[,]" which includes the roads. Association Brief at 45.

A settlement agreement is "in essence a contract binding the parties thereto." *Roe v. Pennsylvania Game Commission*, 147 A.3d 1244, 1250 (Pa. Cmwlth. 2016) (quoting *Commonwealth v. U.S. Steel Corporation*, 325 A.2d 324, 328 (Pa. Cmwlth. 1974)). Courts construe settlement agreements "according to the traditional principles of contract construction." *Commonwealth ex. rel Fisher v. Phillip Morris, Inc.*, 736 A.2d 693, 697 (Pa. Cmwlth. 1999). "The fundamental rule in contract interpretation is to ascertain the intent of the contracting parties" from the writing. *Lesko v. Frankford Hospital-Bucks County*, 15 A.3d 337, 342 (Pa. 2011). Further, the "whole instrument must be taken together in arriving at contractual intent." *Murphy v. Duquesne University of the Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001) (citation omitted). Where the language of the contract is clear and unambiguous, the focus is upon the "terms of the agreement as *manifestly expressed*, rather than as, perhaps, silently intended." *Lesko*, 15 A.3d at 342 (quoting *Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982)) (emphasis in original). A

12

contract is ambiguous where it can be reasonably construed to have more than one meaning. *Sun Company, Inc. (R&M) v. Pennsylvania Turnpike Commission*, 708 A.2d 875, 878 (Pa. Cmwlth. 1998).

Section 6 of the Settlement Agreement provides, in relevant part, as follows:

> 6.    <u>Proportionate Share of Expenses</u>.    Plaintiffs hereby acknowledge and agree that they will pay their proportionate share of maintenance expenses for the common facilities owned and/or managed by [the Association] and which are subject to use by Plaintiffs, on an annual basis.  Plaintiffs shall not be obligated to pay for the following administrative costs incurred by [the Association] and assessed against [the Association] non-members: (1) security; (2) insurance; (3) meetings; (4) picnic/recreation; (5) web page/computer; (6) welcome wagon; (7) [the Association] flags; or (8) costs associated with properties or activities that Plaintiffs are not permitted to participate in due to their non-member status.  [The Association] shall generate bills to Plaintiffs on an annual basis for these proportionate shares of expenses, which bills shall have a sufficient breakdown to identify the costs assessed against Plaintiffs.  Plaintiffs shall not be obligated to pay more than their proportionate share or for the costs of any maintenance in excess of that assigned to members of [the Association].  Plaintiffs agree that they will pay their proportionate share of capital improvement costs related to improvement of the docks, so long as they continue to own boat slip entitlement rights, and to the water system, so long as they continue to utilize the water system. *Plaintiffs are not otherwise obligated to pay a proportionate share of capital improvements to any other [Association] common facility or area that Plaintiffs are not entitled to use or enjoy through their deeded easements or through this Agreement*.

Settlement Agreement, ¶6, at 4-5; R.R. 31a-32a (emphasis added).  The trial court construed Section 6 as follows:

> Section 6 of the Settlement Agreement is clarified to provide that [the Waggles] are required to pay [the Association] *their proportionate share of costs incurred to complete capital*

*improvements to facilities that [the Waggles] have the right to use and enjoy….*

Order, 12/12/2017, at 2 (emphasis added). The trial court simply eliminated the double negative from the final sentence of Section 6. This means that the Waggles were obligated "to pay a proportionate share of capital improvements … to any other common facility or area" they are entitled to use.

Section 6 requires the Waggles to pay: (1) maintenance expenses for common facilities they can use; (2) a proportionate share of capital improvement costs for the boat docks; and (3) a proportionate share of capital improvement costs for the community water system. Section 6 exempts the Waggles from paying for capital improvements to common facilities they "are not entitled to use." Settlement Agreement, ¶6 at 4-5; R.R. 31a-32a. Section 6 does not, however, exempt the Waggles from sharing in the cost of capital improvements to the common facilities that they do use. To the contrary, the final sentence of Section 6 obligates the Waggles to share in these costs.

Further, Section 6 must be read in conjunction with all the provisions of the Settlement Agreement. It recites, *inter alia*, that the Waggles "are required to pay proportionate *expenses* for the common facilities owned by [the Association]." Settlement Agreement at 1; R.R. 28a (emphasis added). Section 5 states that the Waggles have voting rights on issues "involving *monies requested by [the Association] from [the Waggles]*, including monies requested for maintenance and *improvement of common facilities*…." Settlement Agreement at 3, ¶5; R.R. 30a (emphasis added). Section 13 states, in relevant part, that the Waggles cannot use the members-only amenities if they "are not contributing to a proportionate share of the maintenance and/or *improvement* of such facilities." Settlement Agreement at 7, ¶13; R.R. 34a (emphasis added).

14

The Settlement Agreement allows the Waggles to vote on "monies requested by" the Association for "improvement of common facilities." The Settlement Agreement also provides that the Waggles cannot use amenities if they are not contributing to "a proportionate share of the … improvement of such facilities[.]" Settlement Agreement at 7, ¶13; R.R. 34a. The Association argues that these two provisions further memorialize the intention that the Waggles bear a proportionate share of the cost to maintain or improve the facilities and areas they use. We agree.

Finally, we reject the Waggles contention that the trial court's order modified the terms of the Settlement Agreement. "[I]t is not the province of the court to alter a contract by construction or to make a new contract for the parties; its duty is confined to the interpretation of the one which they have made for themselves, without regard to its wisdom or folly." *Steuart*, 444 A.2d at 662 (quotations omitted). In other words,

> [t]he court may not rewrite the contract for the purpose of accomplishing that which, in its opinion, may appear proper, or, on general principles of abstract justice … make for [the parties] a better contract than they chose, or saw fit, to make for themselves, or remake a contract, under the guise of construction, because it later appears that a different agreement should have been consummated in the first instance….

*Id.* (quotation omitted). Here, the trial court limited its role to one of interpretation.

Section 6 obligates the Waggles to pay for improvements to the docks and the water system, and it relieves them from sharing in the "capital improvements to any other common facility or area" that they cannot use "through their deeded easements or through this agreement." Settlement Agreement, ¶6, at 4-5; R.R. 31a-32a. Both Section 9 of the Settlement Agreement and the Waggles' deed give them

15

the right to use the roads in Woodland Hills and, thus, they must pay their proportionate share of the costs for capital improvements to roads or other common areas.

The trial court's interpretation of Section 6 is consistent with the intent of the parties and the language of the Settlement Agreement as a whole. Accordingly, we conclude that the trial court did not err in its interpretation of Section 6 of the Settlement Agreement.

### b. Section 8 of the Settlement Agreement

Next, the Waggles argue that the trial court materially altered Section 8 of the Settlement Agreement by making them pay more for insurance than the other boat slip owners. The Association responds that the Waggles are responsible for their share of the cost of liability insurance on their boat slips. The Association added the Waggles to its insurance policy, although it was not obligated to do so, and it would be inequitable for the Waggles to receive this benefit without paying for it.

Section 8 of the Settlement Agreement states, in relevant part, as follows:

> 8. Dock Slip Entitlements. Plaintiffs will continue to own the entitlement rights to their boat slips on the dock facilities, which are managed [by the Association], which are attached to that certain real property that is owned by [the Association], and which exist pursuant to the [Association's] license with Pennsylvania Power & Light ("PP&L")…. Plaintiffs' ownership of these entitlement rights is subject to the following rules:
>
> > a. Plaintiffs will pay any and all dues, assessments, fees and charges that are uniformly imposed upon all boat slip entitlement owners similarly situated in [the Association].

***

> d. Plaintiffs are solely responsible for the use and safety of their boats and any and all persons utilizing Plaintiffs' boats and boat slip entitlement rights, except to the extent that any such damage is caused by the intentional, negligent, or reckless actions or inactions of [the Association] or any other party.

Settlement Agreement at 5-6, ¶8(a), (d); R.R. 32a-33a (emphasis added). The trial court held that Section 8 required the Waggles "to pay their proportionate share of costs for the purpose of obtaining and maintaining comprehensive and/or liability insurance for the docks…." Order, 12/12/2017, at 3. The trial court also held that, if an insurer's premium was higher based on non-members' use, then the Waggles "shall proportionately pay for such additional insurance premium costs." *Id.*

The Settlement Agreement makes the Waggles responsible for "the use and safety of their boats" and "boat slip." Settlement Agreement at 5, ¶8(d); R.R. 32a. The Settlement Agreement further provides that the Waggles' "use of the boat slips, are subject to all the terms and conditions of the PP&L license attached [to the Settlement Agreement]." Settlement Agreement at 6, ¶8(f); R.R. 33a. The PP&L license agreement requires that the docks and slips be fully insured. *See* PP&L License at 5-6, ¶16; R.R. 44a-45a. Stated otherwise, Paragraph 8 of the Settlement Agreement incorporated the insurance requirement set forth in the PP&L license.

In addition, Section 8(a) of the Settlement Agreement states that the Waggles "will pay any and all dues, assessments, fees and charges that are uniformly imposed upon all boat slip entitlement owners *similarly situated* in [Woodland Hills]." Settlement Agreement at 5, ¶8(a); R.R. 32a (emphasis added). Because the Waggles are not members of the Association, they must make the same premium contribution as all other non-members. *Id.* This amount may be higher, or lower,

17

than what Association members pay. Notably, the record is devoid of evidence that the Waggles' insurance premium is not identical to what is imposed on other non-members or, for that matter, on Association members.

In short, the trial court's interpretation is fully consistent with the language of Section 8.

## Conclusion

For all the above-stated reasons, we affirm the order of the trial court.

_____
MARY HANNAH LEAVITT, President Judge

18

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Kevin M. Waggle and | : | |
| Linda Ann Waggle and | : | |
| Salvatore Russo as trustee | : | |
| | : | |
| v. | : | No. 64 C.D. 2018 |
| | : | |
| Woodland Hills Association, Inc. | : | |
| | : | |
| Appeal of: Kevin M. Waggle | : | |
| and Linda Ann Waggle | : | |

**O R D E R**

AND NOW, this 10th day of July, 2019, the order of Court of Common Pleas of Wayne County, dated December 12, 2017, is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge