J-A25002-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JASON MARGOLIS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RITA MARIE MARGOLIS | : | No. 454 WDA 2021 |

Appeal from the Order Dated March 22, 2021,
in the Court of Common Pleas of Allegheny County,
Family Court at No(s):  FD 16-004092-008.

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.*

MEMORANDUM BY KUNSELMAN, J.:                **FILED:  February 17, 2022**

In this matter, Appellant Jason Margolis (Father) appeals the order issued by the Allegheny County Court of Common Pleas holding him in contempt and awarding counsel fees to Appellee Rita Marie Margolis (Mother), pursuant to the Child Custody Act.  ***See*** 23 Pa.C.S.A. § 5323(g)(1)(v).  After review, we affirm.

The relevant factual and procedural history is as follows.  The parties are the parents of three Children: 11-year-old daughter N.M.; and 8-year-old twins, daughter E.M. and son B.M.  After the parties separated in 2016, Mother and the Children moved to a new home within the same school district, while Father moved to a neighboring suburb.  That same year, the parties entered into a custody consent order, which provided Father with shared legal custody

_____

* Retired Senior Judge assigned to the Superior Court.

and substantial partial physical custody – approximately 6 out of every 14 overnights. *See* Consent Order of Court, 11/7/16 ("2016 Consent Order"). The 2016 Consent Order also included a provision, Paragraph 8, which provided that the parties shall not make "any remarks or do any thing [*sic*] which could in any way be construed as derogatory or uncomplimentary to the other parent[.]" *Id.* at ¶ 8.

In May 2018, Mother brought a motion to enforce Paragraph 8 of the 2016 Consent Order. Mother alleged that Father spoke disparagingly to the Children about the inequities of the custody arrangement. On May 7, 2018, the trial court granted Mother's motion, in part, ordering:

1. Both parties shall adhere to Paragraph 8 of the November 7, 2016 Custody Order, which address speaking negatively to the children about the other parent;

2. Neither party shall [] speak to the children about potential changes to the custody schedule. Specifically, Father is not to use any terms with the children about 50/50 custody or equally shared custody.

Order of Court, 5/7/18 ("2018 Enforcement Order").

This matter concerns whether Father violated the Paragraph 2 of the 2018 Enforcement Order. In June 2020, Father purchased a new home in another neighboring suburb. To acclimate the Children, Father drove the Children in a ten-minute radius around his new home. During one such excursion, Father passed the school complex affiliated with his new suburb. Mother alleged that Father told the Children they could potentially go to this

new school. According to Mother, the statements allegedly enticed N.M., who was having difficulty in her current school. Thereafter, N.M. informed her teacher and guidance counselor that she might switch to Father's school district, that she was still deciding, but that she would likely leave her current district. Mother was not aware Father was moving or that he had discussed changing schools until the guidance counsel relayed N.M.'s statements to Mother.

In January 2021, Mother brought a motion for contempt, alleging Father violated Paragraph 2 of the 2018 Enforcement Order by discussing the custody arrangement with the Children. The court set the matter for a contempt hearing, which was consolidated with the parties' respective petitions for custody modification. The consolidated hearing took place over three days: February 8, February 9, and February 24, 2021.[1]

At the hearing, Father offered into evidence the transcript of the trial court's *in camera* interview of the Children, which occurred the previous January. *See* Exhibit 1 (N.T., 1/28/20 (*in camera* interview), 1-25). The court also heard testimony from Father, who conceded that he drove the Children around his new neighborhood, and that he passed the affiliated school. But Father explained that his only intent was to acclimate the Children to where they would be living part-time, and to find places where they could play and go out to eat. Father admitted that the Children asked questions,

---

[1] Father also appealed the court's resulting custody order. That appeal is separately listed before this panel.

but Father testified that he told the Children they would remain enrolled in Mother's school district. Father stated that he was not aware N.M. had discussed changing school districts until Mother brought it to his attention. However, Father adds that N.M. independently wanted to change schools. Father cites testimony of N.M.'s therapist that the Child desired a fresh start, after having been teased by her classmates.

After considering testimony and evidence, the trial court held Father in contempt, and awarded Mother $1,500 in counsel fees. In its Pa.R.A.P. 1925(a) opinion, the court stated that it was not persuaded by Father's testimony, which it found lacked credibility. *See* Trial Court Opinion, 6/2/21 (T.C.O.) at 14-15. Contrary to Father's assertion, the court did not believe that N.M. came up with the idea of changing schools all on her own. Instead, the court credited Mother's testimony that Father continued to talk to the Children about changing schools. *Id.* at 15. The court also relied on the Children's testimony from the January 2020 *in camera* interview, where it believed that Father had previously coached them to ask for shared custody on his behalf. *Id.*

Father timely filed this appeal, and he presents the following issues for our review:

> 1. Whether the trial court committed an error of law and/or abused its discretion by finding Father to be in contempt of the May 7, 2018 order of court, as a finding of contempt is not supported by the record and/or is based on inappropriate judicial notice?

>    2. Whether the trial court committed an error of law
>       and/or abused its discretion by awarding Mother
>       counsel fees as Father was not in contempt and did
>       not violate 23 Pa.C.S.A. § 5323(g) and/or 23
>       Pa.C.S.A. § 5339.

Father's Brief at 4 (capitalization adjusted) (footnote added).

Our standard of review concerning a trial court's contempt findings is well-established:

> This Court's review of a civil contempt order is limited to a determination of whether the trial court abused its discretion. If a trial court, in reaching its conclusion, overrides or misapplies the law or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record, then discretion is abused.

**B.A.W. v. T.L.W.**, 230 A.3d 403, 406 (Pa. Super. 2020) (citation omitted).

Moreover, "this Court defers to the credibility determinations of the trial court with regard to the witnesses who appeared before it, as that court has had the opportunity to observe their demeanor." **Harcar v. Harcar**, 982 A.2d 1230, 1236 (Pa. Super. 2009) (citations omitted).

The Child Custody Act provides:

> **(g) Contempt for noncompliance with any custody order**.--
>
> (1) A party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:
>
> > (i) Imprisonment for a period of not more than six months.
> >
> > (ii) A fine of not more than $500.

(iii) Probation for a period of not more than six months.

(iv) An order for nonrenewal, suspension or denial of operating privilege under section 4355 (relating to denial or suspension of licenses).

(v) Counsel fees and costs.

23 Pa.C.S.A. § 5323(g)(1)(i-v).

To establish that a party is in civil contempt, the petitioner must establish three prongs by a preponderance of the evidence: 1) that the contemnor had notice of the specific order that he or she is alleged to have disobeyed; 2) that the act which constituted the contemnor's violation was volitional; and 3) and that the contemnor acted with wrongful intent. ***B.A.W.***, 230 A.3d at 406 (citations omitted). We note that civil contempt may be proven by circumstantial evidence and logical inferences from other facts. ***Waggle v. Woodland Hills Association, Inc.***, 213 A.3d 397, 403 (Pa. Cmwlth. 2019) (citing ***Commonwealth v. Reese***, 156 A.3d 1250, 1258 (Pa. Super. 2017)). Wrongful intent can be inferred from circumstantial evidence. ***Id.***

In his first appellate issue, Father claims the contempt finding lacked evidentiary support.[2] ***See*** Father's Brief at 9. Father's general argument

_____

[2] In his statement of questions involved, Father also claimed the court took improper judicial notice. However, there is no other reference to judicial notice in his Brief, nor citation to either the record or to relevant legal authorities on this point. ***See*** Pa.R.A.P. 2119(a) ("The argument shall be…followed by discussion and citation of authorities as are deemed pertinent."). We must conclude Father has decided to abandon this aspect of his argument.

tracks with the three-prong contempt analysis. First, Father essentially argues he lacked notice that he could not talk about changing schools. He explains that the 2018 Enforcement Order was executed following Mother's request to prevent any discussion of physical custody with the Children. Father alleges "it could not have been predicted by the parties that an alleged discussion of local schools within a short radius of the parties' homes would fall under the purview of the [2018 Enforcement Order]." *See* Father's Brief at 12. Second, Father argues that his discussion with the Children did not constitute a volitional act. Father reasons that even if the Children changed schools, the parties would still live close enough to each other such that the physical custody schedule could remain unchanged. *Id*. at 12. Thus, according to Father, a discussion about schools does not constitute a discussion about custody, as proscribed by the 2018 Enforcement Order. Third, Father contends that, even if he was on notice, and that a discussion about schools constituted a volitional act, Mother did not prove that Father acted with wrongful intent. *Id.* at 16. Beyond the school discussion, Father concludes that Mother did not cite any other instance of contempt.

We begin our analysis by noting that the court's contempt decision was almost entirely based on its credibility determinations and the negative inferences therefrom. Put plainly, the court believed Mother's testimony that Father's discussion with the Children about changing schools marked his latest attempt to manipulate the Children into wanting shared custody, which was precisely what Paragraph 2 of the 2018 Enforcement Order prohibited. We

must determine whether the trial court's conclusions were manifestly unreasonable in light of the record. *See B.A.W.*, 230 A.3d at 406.

We address contemporaneously Father's contentions under the first and second prongs of the contempt analysis, *i.e.*, that he lacked notice that he could not discuss a school change, and that his discussion did not constitute an act in violation of the 2018 Enforcement Order. Father claims that the 2018 Enforcement Order did not cover discussions about school changes. His argument is predicated upon a narrow reading of Paragraph 2, which prohibited Father from speaking to the Children "about potential changes to the custody schedule" and from using "any terms with the [C]hildren about 50/50 custody or equally shared custody." *See* 2018 Enforcement Order at ¶2. Father believes that this provision only prohibited discussions about *physical* custody, and that a conversation about changing schools was too far removed from the intent of the Order. According to Father, a general discussion about school choice was permissible under the order because, theoretically, the Children could switch schools without disturbing the parties' physical custody arrangement.

We are not persuaded by this rationale. Even under the strictest reading of the Order, we note that Paragraph 2 does not differentiate between physical custody and legal custody. We note further that the Child Custody Act defines legal custody as "the right to make major decisions on behalf of the child, including, but not limited to, medical, religious and *educational decisions*." 23 Pa.C.S.A. § 5322 ("Definitions") (emphasis added). Thus, a discussion

- 8 -

regarding school choice is necessarily a discussion about legal custody, which was prohibited as not being in the Children's best interests.

Perhaps more importantly, the trial court was within its discretion to infer that Father's discussion about a school change ***was*** an indirect discussion about the ***physical*** custody schedule. The trial court believed Mother's testimony that the point of Father's discussion about the school change was to influence the Children into desiring shared physical custody with Father. ***See*** T.C.O. at 15. At the contempt hearing, Mother testified that "the [C]hildren still tell me that daddy still thinks [N.M.] should go to [his school district.] […] So clearly he is still filling the kids' ears talking about this issue. […] So clearly he is trying to influence them and manipulate them." ***See also*** N.T., 2/24/21 (Day 3), at 709-10.

Therefore, no matter how the 2018 Enforcement Order is construed, Father was on notice not to discuss custody in any form. And when he spoke to the Children about the possibility of changing schools, he violated the 2018 Enforcement Order. We conclude that the trial court properly determined that Mother satisfied the first two prongs of the contempt analysis.

Finally, Father argues that even if the trial court found Mother satisfied the first two prongs, she did not prove that he acted with wrongful intent under the third prong. He reasons that when he drove past the school affiliated with his new district, he only meant to acclimate the Children to his new neighborhood. We reiterate, the trial court agreed with Mother's

testimony that Father's true aim was to influence the Children into desiring more custody time with Father. *See id.*

In addition to Mother's testimony, the court inferred Father's wrongful intent from its previous *in camera* interview with the Children. The trial court firmly believed that Father coached the Children to advocate on his behalf at the interview. *See* T.C.O. at 14-15. The Children told the court that Father tells them the custody arrangement is not fair. *See* N.T. (*in camara* interview) at 8. They asked the court to help them get equal time with both parents, because that is what Father wants. *Id.* at 19. The Children said they want equal time, because Father wants to see them more. *Id.* at 8. The Children told the court that they thought the custody schedule should be even, and they even alluded to a 5-5-2-2 arrangement.[3] *Id.* at 7. The Children also told the court that they want Mother to get a job, so she would have more money and so they can have more toys. *Id.* at 13. The Children told the court that Father wished Mother had a job, but she chooses not to get one. *Id.* at 13-14. Thus, the court found that Father's discussion regarding the possibility of changing schools was a similar attempt to influence the Children's custody preferences.

---

[3] Under a 5-5-2-2 shared custody arrangement, Parent A exercises custody for five consecutive days, followed by Parent B for five consecutive days, followed by Parent A for two days, followed by Parent B for two days. Then the two-week cycle repeats. Typically, under this arrangement, Parent A has Monday/Tuesday, while Parent B has Wednesday/Thursday, and the parents alternate the weekends (Friday/Saturday/Sunday).

On appeal, Father refutes the trial court's determination that he coached the Children by citing the testimony of Dr. Jan Marlan, who conducted psychological evaluations of the Children. Dr. Marlan testified that she did not believe the Children were being coached. Essentially, Father asks us to reweigh the evidence. That is not our function. "[T]he trier of fact while passing upon the credibility of the witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *See Shaner v. Harriman*, 189 A.3d 1088, 1090 (Pa. Super. 2018) (citation omitted). Moreover, the trial court is not required to accept the opinions of expert witnesses, so long as the court's conclusions are founded in the record. *See M.A.T. v. G.S.T.*, 989 A.2d 11, 20 (Pa. Super. 2010). Here, the trial court was within its discretion to depart from Dr. Marlan's opinion, in favor of its own firsthand impressions.

The court was also within its discretion to believe Mother's testimony and to discount Father's. The court opined that Father's lack of credibility had a significant impact on its findings. *See* T.C.O. at 7. The court noted one instance where Father pre-arranged a meeting with N.M.'s educational support team at her school without notifying Mother. Father claimed the meeting "just happened" while he was at school to deposit money into N.M.'s lunch account, though the evidence showed no deposit was made that day. *Id.* at 7 n.4; citing N.T., 2/24/21 (Day 3), at 369-75.

At the hearing, Father said N.M. came up with the idea of changing schools after meeting new friends in Father's neighborhood and desiring a

fresh start. *See* N.T., 2/8/21 (Day 1) at 155-56. Father denied telling the Children that they would be changing school districts. *See* N.T. at 155. Father testified that when the Children asked about changing schools, "I told them initially that's something mommy and I will have to talk about, and eventually dissuaded them from that line of thinking." *See* N.T. at 362.

Ultimately, the trial court believed Mother and inferred that Father acted with wrongful intent when he discussed changing schools with the Children. Moreover, the court had the authority to rely on circumstantial evidence and inferences to find Father acted with the requisite intent. *See Waggle*, 213 A.3d at 403. This Court is "not authorized to nullify the fact-finding function of the trial court in order to substitute our judgment for that of the trial court." *B.K. v. J.K.*, 823 A.2d 987, 990 (Pa. Super. 2003) (citation omitted).

In sum, the trial court found that Mother satisfied her burden to prove: 1) that Father had notice he was not to engage in conversation with the Children about potential changes to the custody arrangement; 2) that he violated that provision when he discussed changing schools with them; and 3) that Father acted with wrongful intent, as evidenced by Father's previous efforts to coach the Children into asking the court for shared custody. We do not find any of these conclusions to be manifestly unreasonable, and thus we discern no abuse of discretion. Father's first appellate issue is without merit.

In his second appellate issue, Father argues that the trial court's award of $1,500 in counsel fees to Mother was erroneous under Sections 5539 and 5323(g)(1). *See* Father's Brief at 4.

Regarding Section 5339, that Section provides, "[u]nder [the Child Custody Act], a court may award reasonable interim or final counsel fees, costs and expenses to a party if the court finds that the conduct of another party was obdurate, vexatious, repetitive or in bad faith."  23 Pa.C.S.A. § 5339.  It is apparent from the record that the trial court did not sanction Father under Section 5339, but only award fees under Section 5323(g)(1)(v). Thus, we limit out analysis to this Section.

Regarding 5323(g)(1), we have already concluded in Father's first appellate issue that the trial court was within its discretion to hold Father in contempt under that Section.  Nonetheless, the crux of Father's argument on this issue is that the counsel fee award was erroneous because the amount was arbitrary.  *See id.* at 16.

Specifically, Father reasons that when Mother filed her contempt motion, she requested a counsel fee award for 1) the $550 expense incurred for the drafting of the contempt motion, and for 2) the to-be-determined expense of arguing the contempt motion before the court.  However, the court did not hold arguments on its motions, due to the Covid-19 restrictions.  Thus, according to Father, Mother should not be awarded fees for an expense she did not incur. *Id.* at 16-17.

Mother responds that the award was meant to cover not only the drafting of the motion, but also for some of the costs she incurred to litigate the contempt issue at trial.  In fact, Mother argues that the $1,500 award constituted a dramatic reduction from what she requested.  *See* Mother's Brief

at 24-25. Mother had requested thousands more, under the theory that Father's manipulation of the Children was a principal reason why the consolidated custody case went to a hearing instead of being settled. ***Id.***

After review, we discern no abuse of discretion. The court's counsel fee award clearly compensated Mother for the drafting of the motion and for litigating the contempt issue at trial. The award was neither arbitrary, nor unreasonable. We conclude Father's second appellate issue is also without merit.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/17/2022