# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Patrick Murray, Allison Murray, and Robert Neely, | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| Shaler Township Zoning Hearing | : | |
| Board, Township of Shaler and | : | No. 966 C.D. 2021 |
| Scioto Properties SP-16 LLC | : | Argued: February 7, 2022 |


BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                      FILED:  March 14, 2022

Patrick Murray (Appellant Murray), Allison Murray, and Robert Neely (collectively, Appellants) appeal from the Allegheny County Common Pleas Court's (trial court) August 11, 2021 order affirming the Shaler Township (Township) Zoning Hearing Board's (ZHB) December 10, 2020 decision that upheld the Township's Zoning Officer Robert C. Vita's (Zoning Officer) determination that granted a Certificate of Zoning Compliance (Zoning Certificate) to Scioto Properties SP-16 LLC (Scioto) for the property located at 444 McElheny Road in the Township (Property).  Appellants present two issues for this Court's review: (1) whether the ZHB erred by concluding that the ZHB and Appellants were bound by a Full and Final Settlement and General Release of All Claims (Settlement Agreement); and (2) whether the ZHB erred by concluding that the Zoning Officer properly issued

the Zoning Certificate for the proposed use at the Property.[1]  After review, this Court reverses.

## Background[2]

Scioto is a national developer of properties for persons with disabilities and other special needs.[3]  Scioto purchased the Property in November 2017.  The Property consists of two lots totaling 1.8 acres located in the Township's Limited One-Family (R-1) Zoning District.  The Property included a four-bedroom, four-bathroom ranch-style house with a footprint of 2,273 square feet and a total living area of 3,939 square feet (Dwelling).  Scioto purchased the Property with the intention of leasing it to ReMed Recovery Care Centers LLC (ReMed), for use as a residence for eight unrelated persons with disabilities resulting from traumatic brain injuries.[4]  Appellants reside in McElheny Road properties that abut the Property.

---

[1] Appellants present two issues in their Statement of Questions Involved: (1) whether the trial court erred by concluding that Appellants and the ZHB were bound by the Settlement Agreement; and (2) whether the trial court erred by affirming the ZHB's decision that, although the *Zoning Ordinance of the Township of Shaler* defines "family" to include no more than three unrelated persons, the Zoning Officer correctly determined that the proposed use of the Property by six unrelated persons with disabilities would be for a single family, and was a reasonable and necessary accommodation under the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601-3631.  *See* Appellants' Br. at 4-5.  Appellants challenge the propriety of *the trial court's decision*.  Because this Court's review is limited to the ZHB's decision, *see Friends of Lackawanna v. Dunmore Borough Zoning Hearing Bd.*, 186 A.3d 525 (Pa. Cmwlth. 2018), the issues have been rephrased accordingly.

[2] The underlying facts of this case are largely undisputed.  On October 1, 2020, the parties stipulated to the details of the proposed use's operation (Stipulations).  *See* Reproduced Record (R.R.) at 315a-319a.

[3] Scioto is a limited liability company organized on a for-profit basis, that owns approximately 1,400 properties in 40 states.

[4] ReMed is a for-profit company that provides rehabilitation to adults who have suffered traumatic brain injuries.  It is regulated by the Pennsylvania Department of Human Services and accredited by the Commission on Accrediting Rehabilitation Facilities.  The purpose of residential rehabilitative treatment is "to recreate family dynamics and retrain the individual[s] to be able to operate within family systems and small living communities."  R.R. at 98a; *see also* R.R. at 99a, 107a.

2

Section 225-13.A of the *Zoning Ordinance of the Township of Shaler* (Ordinance) specifies that the permitted principal use of properties located in the Township's R-1 Zoning District "shall be one-family dwellings." Shaler Twp., Pa. Zoning Ordinance (Ord.) § 225-13.A (2014) (Reproduced Record (R.R.) at 147a). Section 225-218 of the Ordinance defines "family" as:

> Either an individual or two or more persons related by blood or marriage or adoption and, in addition, any domestic servants or gratuitous guests thereof or a group of not more than three persons who need not be related, who are living together in a single dwelling unit and maintaining a common household. Nothing in this chapter is intended or shall be interpreted, enforced or administered in any means or manner inconsistent with or conflicting with the [f]ederal Fair Housing Amendments Act of 1988 [(FHAA), 42 U.S.C. §§ 3601-3631].

Ord. § 225-218 (R.R. at 276a). Because the Ordinance permits only up to three unrelated people to live together in a house in the Township's R-1 Zoning District as though they are family, the Ordinance prohibits the proposed use at the Property.[5]

However, Section 3604(f)(2)of the FHAA provides that it shall be unlawful

> [t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of--
>
> **(A)** that person; or
>
> **(B)** a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or

---

[5] Group-care facilities consisting of two or more unrelated disabled persons are permitted in the Township's Multifamily Dwelling (R-4) Zoning District as a conditional use. *See* R.R. at 149a-150a, 278a. There are currently 20 group homes in the Township for intellectually challenged persons. *See* R.R. at 82a. The record does not reflect in which of the Township's Zoning Districts those homes are located.

**(C)** any person associated with that person.

42 U.S.C. § 3604(f)(2). Section 3604(f)(3)(B) of the FHAA specifies that, for purposes of Section 3606(f) of the FHAA, discrimination includes "a refusal to make **reasonable accommodations** in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling[.]" 42 U.S.C. § 3604(f)(3)(B) (emphasis added).

On March 20, 2018, (and revised April 12, 2018), Scioto and ReMed jointly filed an application with the ZHB to operate a residential home at the Property for up to eight unrelated persons who have suffered brain injuries to live together as a single-family unit with 24-hour assistance from staff (2018 Application). In the 2018 Application, Scioto and ReMed raised a substantive validity challenge to the Ordinance, pursuant to Section 909.1(a)(1) of the Pennsylvania Municipalities Planning Code (MPC).[6] In the alternative, they asked the ZHB to interpret the Ordinance's definition of "family" to permit the proposed use and/or grant a reasonable accommodation for the proposed use at the Property pursuant to the FHAA or the Americans with Disabilities Act of 1990 (ADA)[7] to institute the proposed use on the Property. *See* R.R. at 602a. In the 2018 Application, Scioto and ReMed proposed to add approximately 2,627 square feet to the Dwelling,

---

[6] Act of July 31, 1968, P.L. 805, *as amended*, added by Section 87 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10909.1(a)(1). Section 909.1(a) of the MPC states, in relevant part:

> The zoning hearing board shall have exclusive jurisdiction to hear and render final adjudications in the following matters:
>
> (1) Substantive challenges to the validity of any land use ordinance, except those brought before the governing body pursuant to [S]ection[] 609.1 [of the MPC, added by Section 10 of the Act of June 1, 1972, P.L. 333, 53 P.S. § 10609.1 (relating to curative amendments),] and [Section] 916.1(a)(2) [of the MPC, added by Section 99 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10916.1(a)(2) (relating to curative amendments)].

53 P.S. § 10909.1(a).

[7] 42 U.S.C. §§ 12101-12213.

4

increasing its size to 6,566 square feet, and related Scioto's intention to include 8 parking spaces.

The ZHB conducted hearings on the 2018 Application on May 10, June 14, and July 18, 2018. At the hearings, ReMed's Clinical Director of Residential Programs Regina Lesako (Lesako) testified concerning the proposed use's operation if approved, and Scioto employee Bill Lepper explained the proposed physical alterations to the Property. Appellants opposed the 2018 Application, specifically objecting because of added occupancy by residents and staff, more vehicle traffic, and the expanded Dwelling's footprint. Appellants also presented the testimony of brain injury expert Scott Tracy, Ph.D. (Dr. Tracy), who described that the proposed use was inappropriate in the Township's R-1 Zoning District. The ZHB granted Appellants' unopposed request to appear as party protestants. The Township took no position on the 2018 Application.

On September 13, 2018, the ZHB denied and dismissed the 2018 Application. *See* R.R. at 601a-614a. The ZHB explained that Scioto failed to demonstrate how the proposed use complied with the Ordinance's definition of "family" and, in the alternative, failed to show that allowing the proposed use at the Property would be a reasonable accommodation. *See* R.R. at 613a.

On October 29, 2018, Scioto and ReMed filed a civil action in the United States (U.S.) District Court for the Western District of Pennsylvania (District Court) against the Township and the ZHB,[8] alleging that, in denying the 2018 Application, the ZHB and the Township violated the FHAA; Section 504 of the

---

[8] *Scioto Props. SP-16 LLC v. Twp. of Shaler* (W.D. Pa., No. 2:18-cv-01448).

5

Rehabilitation Act of 1973 (Rehabilitation Act);[9] Section 202 of the ADA;[10, 11] the equal protection clause of the U.S. Constitution;[12] Section 1983 of the Civil Rights Act of 1871;[13] and the equal protection clause of article 1, section 26 of the

[9] Section 504 of the Rehabilitation Act declares, in relevant part: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving [f]ederal financial assistance . . . ." 29 U.S.C. § 794.

[10] Section 202 of the ADA provides: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

[11] "[B]oth the ADA and the Rehabilitation Act impose upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals." *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005). "Because '[t]he relevant portions of the [FHAA], [the] ADA, and . . . the Rehabilitation Act offer the same guarantee that a covered entity . . . must provide reasonable accommodations . . . to people with disabilities,' 'analysis of a reasonable accommodation claim under the three statutes is treated the same.'" *Logan v. Matveevskii*, 57 F. Supp. 3d 234, 253 (S.D.N.Y. 2014) (quoting *Sinisgallo v. Town of Islip Hous. Auth.*, 865 F. Supp. 2d 307, 337 (E.D. N.Y. 2012)) . . . [.]

*Oxford House, Inc. v. Browning*, 266 F. Supp. 3d 896, 907 (M.D. La. 2017).

[12] Section 1 of the Fourteenth Amendment to the U.S. Constitution states, in pertinent part:

No [s]tate shall make or enforce any law which shall abridge the privileges or immunities of citizens of the [U.S.]; nor shall any [s]tate deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONST. amend. XIV, § 1.

[13] Section 1983 of the U.S. Code specifies, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any [s]tate . . . subjects, or causes to be subjected, any citizen of the [U.S.] or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.

Pennsylvania Constitution.[14]  *See* R.R. at 616a-631a.  On January 8, 2019, the District Court granted Appellants' motion to intervene in the civil action. Appellants, the ZHB, and the Township filed answers to the complaint.

Through the District Court's Alternative Dispute Resolution process, at mediation, Scioto, ReMed, and the Township entered into the Settlement Agreement, wherein it was agreed that: (1) Scioto and ReMed would withdraw and dismiss the civil action; (2) Scioto would withdraw the 2018 Application; (3) Scioto would submit a new application reducing the number of proposed residents from 8 to 6, and eliminate its request to double the Dwelling size; and (4) the Township would "interpret and apply its [Ordinance] in a manner consistent with the disabilities clause[s] of the [FHAA] . . . ; Section 504 of the Rehabilitation Act, . . . [;] and [] offer a reasonable accommodation to [Scioto and ReMed.]"[15] R.R. at 297a; *see also* R.R. at 296a-304a.  Although the Settlement Agreement identified the ZHB as a released party, the ZHB did not execute the Settlement Agreement.  Appellants attended the mediation, but they did not join the Settlement Agreement.

On September 9, 2019, Scioto and ReMed filed a motion to dismiss the civil action (Dismissal Motion).  *See* R.R. at 697a-700a.  Scioto and ReMed apprised the District Court therein that Appellants did not agree to the settlement.  *See* R.R. at 698a.  Scioto and ReMed referenced the Settlement Agreement in the Dismissal Motion, but did not attach the Settlement Agreement to the Dismissal Motion. Although the Dismissal Motion informed the District Court that "[the Township] will issue [Scioto and ReMed] a use permit to occupy and use [the] [P]roperty as a

---

[14] Article 1, section 26 of the Pennsylvania Constitution states: "Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right."  PA. CONST. art. 1, § 26.

[15] Scioto executed the Settlement Agreement on October 16, 2019, ReMed executed it on October 22, 2019, and the Township Board of Commissioner's President David Shutter executed it on November 12, 2019.

group home for not more than six (6) unrelated individuals with disabilities, along with associated staff support[,]" the parties agreed that Appellants would retain their right to challenge the Township's grant of the permit. R.R. at 698a.

On November 20, 2019, Appellants filed a response to the Dismissal Motion, wherein Appellants did not oppose the dismissal but, rather, requested that the District Court condition dismissal on Scioto and ReMed paying Appellants' attorney's fees and costs. *See* R.R. at 703a-709a, 723a-729a. On February 21, 2020, the District Court granted the Dismissal Motion and dismissed the civil action with prejudice, but without conditions. *See* R.R. at 723a-729a. The District Court added that Appellants "maintain their right to challenge, by way of appeal pursuant to state land use law, the agreed-upon use permit when it is issued to [Scioto and ReMed] by [the Township and the ZHB]." R.R. at 727a.

On July 30, 2020, Scioto filed an application for a zoning certificate to use the Property as a residence for not more than six persons with disabilities, along with associated staff, consistent with the terms of the Settlement Agreement (2020 Application).[16] The same day, the Zoning Officer issued the Zoning Certificate permitting occupancy as follows:

> R-1 Single Family, to be used as a community[-]based group home for persons with disabilities[,] with an occupancy of no more than 6 residents at one time[,] along with associated staff consistent with the terms of the [Settlement Agreement] last executed on November 12, 2019[,] between the Township [] and Scioto.

R.R. at 305a. Appellants appealed to the ZHB, which conducted a hearing on October 8, 2020.[17] At the hearing, the Zoning Officer testified that he granted the

---

[16] The 2020 Application does not appear to be a part of the record before this Court. Scioto obtained the Township Planning Commission's approval of its site plan. *See* R.R. at 129a, 131a.

[17] In addition to hearing testimony, the ZHB admitted into the record, *inter alia*: the Zoning Certificate, the Stipulations, the ZHB hearing transcripts and findings of fact and conclusions of law relating to the 2018 Application, documents from the civil action, the Settlement Agreement,

8

Zoning Certificate pursuant to the Settlement Agreement and the FHAA "at the instruction of the Township Solicitor Harlan Stone [(Township Solicitor)]." R.R. at 69a; *see also* R.R. at 66a, 70a, 73a.

On December 10, 2020, the ZHB voted to deny the appeal and uphold the Zoning Officer's issuance of the Zoning Certificate, "because the reasonable accommodation granted by the Township [] in the [Settlement Agreement] . . . is binding upon the [ZHB] and the proposed use is compliant with the [Ordinance] due to the changed circumstances and the lack of an addition to the existing residential building." R.R. at 845a. The ZHB issued its findings of fact and conclusions of law on January 6, 2021, wherein it added that the Zoning Officer's grant of the Zoning Certificate was a reasonable accommodation to ensure the Township's compliance with federal law. *See* R.R. at 847a-854a.

Appellants appealed from the ZHB's decision to the trial court, which heard argument and, on August 11, 2021, affirmed the ZHB's decision. *See* R.R. at 931a-938a. Appellants appealed to this Court.[18]

---

the Planning Commission's transcript, and the approved site plan. *See* R.R. at 58a-59a, 65a, 92a-93a, 130a-131a, 848a-849a.

After the ZHB hearing, the parties submitted proposed findings of fact and conclusions of law. Also, at the ZHB's request, Appellants, Scioto, and the Township submitted supplemental letter briefs addressing whether the ZHB was bound by the Settlement Agreement. In its letter brief, the Township argued that the Settlement Agreement bound the ZHB.

[18] Appellate review of a decision of a zoning hearing board, where the trial court does not take any additional evidence, is limited to determining whether the [zoning hearing] board abused its discretion or committed an error of law. *Twp. of Exeter v. Zoning Hearing Bd. of Exeter Twp.*, . . . 962 A.2d 653 ([Pa.] 2009). An abuse of discretion occurs where the [zoning hearing] board's findings are not supported by substantial evidence. *Id.* Substantial evidence is such relevant evidence that a reasonable person would accept as adequate to support the conclusion reached. *Id.*

*Friends of Lackawanna*, 186 A.3d at 531 n.6.

9

**Discussion**

**1. Settlement Agreement**

Appellants argue that neither they nor the ZHB were bound by the Settlement Agreement, and the District Court's dismissal of the civil action did not bind Appellants or the ZHB to the Settlement Agreement. Specifically, Appellants contend that the ZHB did not execute the Settlement Agreement, the Settlement Agreement contained no promises that the ZHB would do or refrain from doing anything, the ZHB was not mentioned in the *Consideration* section of the Settlement Agreement, and the Settlement Agreement did not create any obligations for the ZHB.

The Township, the ZHB, and Scioto respond that the Settlement Agreement was valid and enforceable and bound the Township and the ZHB.[19] They specifically claim that Pennsylvania law authorizes municipalities to settle land disputes with developers, as long as the municipality does not amend the Ordinance or permit an unlawful act. The Township, the ZHB, and Scioto assert that Appellants do not make either argument but, rather, claim that since neither they nor the ZHB signed the Settlement Agreement, they are not bound by it.

Initially, this Court acknowledges that Pennsylvania "law favors settlements." *Miravich v. Twp. of Exeter, Berks Cnty.*, 54 A.3d 106, 112 (Pa. Cmwlth. 2012); *see also Summit Twp. Taxpayers Ass'n v. Summit Twp. Bd. of Supervisors*, 411 A.2d 1263 (Pa. Cmwlth. 1980). In particular, "the courts of this Commonwealth have recognized that settlement agreements are a permissible tool for resolving land use disputes." *Miravich*, 54 A.3d at 112.

---

[19] Scioto adopts and incorporates the Township's and the ZHB's arguments that the Settlement Agreement is valid and enforceable. *See* Scioto Br. at 21.

10

A settlement agreement is "in essence a contract binding the parties thereto." *Roe v. P[a.] Game Comm[']n*, 147 A.3d 1244, 1250 (Pa. Cmwlth. 2016) (quoting *Commonwealth v. U.S. Steel Corp[.]*, . . . 325 A.2d 324, 328 ([Pa. Cmwlth.] 1974)). Courts construe settlement agreements "according to the traditional principles of contract construction." *Commonwealth ex rel. Fisher v. Phillip Morris, Inc.*, 736 A.2d 693, 697 (Pa. Cmwlth. 1999).

*Waggle v. Woodland Hills Ass'n, Inc.*, 213 A.3d 397, 405 (Pa. Cmwlth. 2019).

However, "[t]o be enforceable, a settlement agreement must possess all the elements of a valid contract -- offer, acceptance, and consideration or a meeting of the minds." *Baribault v. Zoning Hearing Bd. of Haverford Twp.*, 236 A.3d 112, 118 (Pa. Cmwlth. 2020). "A 'general principle of contract law [is] that an agreement cannot legally bind persons who are not parties [thereto].'" *Mandler v. Commonwealth*, 247 A.3d 104, 114 (Pa. Cmwlth.), *aff'd*, 263 A.3d 551 (Pa. 2021) (quoting *Chambers Dev. Co., Inc. v. Commonwealth ex rel. Allegheny Cnty. Health Dep't*, 474 A.2d 728, 731 (Pa. Cmwlth. 1984)).

Here, Appellants refused to join the Settlement Agreement and the District Court's order dismissing the civil action expressly "maintain[ed] their right to challenge, by way of appeal pursuant to state land use law, the agreed-upon use permit when it is issued to [Scioto and ReMed] by [the Township and the ZHB]." R.R. at 727a. Accordingly, Appellants were not bound by the Settlement Agreement.

Regarding the ZHB's status relative to the Settlement Agreement,

the Pennsylvania Supreme Court has made clear that "the authority of a zoning [hearing] board to act arises exclusively from the ordinance and the enabling statute and the language of both demarcates [its] jurisdiction . . . . *Norate Corp. v. Zoning Bd. of Adjustment of Upper Moreland Twp.*, . . . 207 A.2d 890, 893-94 ([Pa.]1965).

11

> [A] zoning [hearing] board is not a legislative body, and it lacks authority to modify or amend the terms of a zoning ordinance. '[Z]oning [hearing] boards . . . must not impose their concept of what the zoning ordinance should be, but rather their function is only to enforce the zoning ordinance in accordance with the applicable law.' Thus, the [zoning hearing] [b]oard is required to apply the terms of the [z]oning [o]rdinance as written rather than deviating from those terms based on an unexpressed policy.
>
> *Greth Dev. Grp., Inc. v. Zoning Hearing Bd. of Lower Heidelberg Twp.*, 918 A.2d 181, 187 (Pa. Cmwlth. 2007) (citation omitted . . . ) (quoting *Ludwig v. Zoning Hearing Bd. of Earl Twp.*, 658 A.2d 836, 838 (Pa. Cmwlth. 1995)); *see also MarkWest* [*Liberty Midstream & Res., LLC v. Cecil Twp. Zoning Hearing Bd.*, 102 A.3d 549 (Pa. Cmwlth. 2014)]. "A zoning hearing board does not enjoy broad, inchoate powers to advance its members' vision of what constitutes the public welfare or even the public welfare as defined in a variety of environmental protection statutes, be they state or federal. Other governmental agencies bear that enforcement authority." *HHI* [*Trucking & Supply, Inc. v. Borough Council of Borough of Oakmont*], 990 A.2d [152,] 160 [(Pa. Cmwlth. 2010)] . . . .

*MarkWest Liberty Midstream & Res., LLC v. Cecil Twp. Zoning Hearing Bd.*, 184 A.3d 1048, 1060 (Pa. Cmwlth. 2018) (emphasis omitted). Therefore, "a zoning hearing board . . . is a municipal agency [that] has no authority to act on behalf of the municipality itself." *Marshall v. Charlestown Twp. Bd. of Supervisors*, 169 A.3d 162, 166 (Pa. Cmwlth. 2017). Rather, its "only role is to act as an adjudicatory body . . . ." *Id.*; *see also* Section 909.1(a) of the MPC, 53 P.S. § 10909.1(a) (describing zoning hearing board jurisdiction).[20]

---

[20] Section 909.1(a)(3) of the MPC, declares that zoning hearing boards are authorized to hear and render final adjudications in "[a]ppeals from the determination of the zoning officer, including . . . the granting . . . of any permit[.]" 53 P.S. § 10909.1(a)(3).

12

Here, the Township is a first-class township governed by its Board of Commissioners (Board) pursuant to The First Class Township Code (Code).[21] Section 1801(a) of the Code authorizes *the Board* to "make contracts for lawful purposes . . . " on the Township's behalf. 53 P.S. § 56801(a). The contract in this case - the Settlement Agreement - named the Township and the ZHB as released parties, and Board president David Shutter signed the document on behalf of both the Township and the ZHB.[22] *See* R.R. at 296a, 304a. Accordingly, regardless of whether the ZHB approved and/or signed the Settlement Agreement, to the extent it was valid and legally enforceable, the ZHB was bound by it.

Notwithstanding that settlement agreements are permissible for resolving land disputes, and can even "permit[] a departure from existing zoning ordinance regulations[,]" *Miravich*, 54 A.3d at 112; *see also Summit Twp. Taxpayers Ass'n*, the Pennsylvania Supreme Court has warned:

> The proposition has long been recognized in this Commonwealth that individuals cannot, by contract, abridge police powers which protect the general welfare and public interest. As stated in *Leiper v. Baltimore & Philadelphia Railroad Co.*, . . . 105 A. 551, 553 ([Pa.] 1918)[:] "Where the rights of individuals under a contract which would otherwise be perfectly valid are in conflict with the 'general well-being of the [s]tate,' the rights of the individuals must give way to the general welfare." *See also, Mun*[.] *Auth*[.] *of Blythe v. P*[a.] *Pub*[.] *Util*[.] *Comm*[']*n*, . . . 185 A.2d 628 ([Pa. Super.] 1962). The

---

[21] Act of June 24, 1931, P.L. 1206, *as amended*, 53 P.S. §§ 55101-58501. "The [Township] is governed by the [Board] as established under [the Code]." www.shaler.org/27/Government (last visited Mar. 11, 2022). "The Board plays the central role in Township government by serving as the main legislative body of the Township." www.shaler.org/150/Board-of-Commissioners (last visited Mar. 11, 2022); *see also* Section 225-199 of the Ordinance, Ord. § 225-199 (describing the Board as the Township's legislative body) (R.R. at 236a-237a); Sections 225-216 and 225-217 of the Ordinance, Ord. §§ 225-216, 225-217 (describing that the Board enforces the Ordinance) (R.R. at 262a-263a).

[22] Although not part of the record, the Township's counsel represented at this Court's February 2022 oral argument that the Board approved the Settlement Agreement at a public meeting.

police power of municipalities cannot be subjected to agreements which restrict or condition zoning district classifications as to particular properties. We are in accord with the position adopted by the Supreme Court of New Jersey, in *Houston Petroleum Co. v. Automotive Products Credit Assoc['']n, Inc.*, . . . 87 A.2d 319, 322 ([N.J.] 1952), wherein the [c]ourt stated: "**Contracts thus have no place in a zoning plan and a contract between a municipality and a property owner should not enter into the enactment or enforcement of zoning regulations**." In *Houston*, covenants and restrictions agreed to by a landowner as a means of effecting a zoning change were held invalid on grounds that the purported contract thereby made, was, with regard to the municipality, ultra vires and contrary to public policy. In so holding, the Court relied upon its decision in *V.F. Zahodiakin Engineering Corp. v. Zoning Board of Adjustment*, . . . 86 A.2d 127, 131 ([N.J.] 1952), setting forth the following principle, with which we agree, governing exercise of municipal zoning power:

> **Zoning** is an exercise of the police power to serve the common good and general welfare. It is elementary that the legislative function **may not be surrendered or curtailed by bargain or its exercise controlled by the considerations which enter into the law of contracts**. The use restriction must [] have general application. The power may not be exerted to serve private interests merely, nor may the principle be subverted to that end.

*Carlino v. Whitpain Invs.*, 453 A.2d 1385, 1388 (Pa. 1982) (emphasis added).

Relative to the 2020 Application, the ZHB admitted the Settlement Agreement into the record. *See* R.R. at 848a. Although the Settlement Agreement reflects the parties' intention for the Township "to interpret and apply its [Ordinance] in a manner consistent with the disabilities clause[s] of the [FHAA] . . . [and] Section 504 of the Rehabilitation Act . . . ," R.R. at 297a, and that Appellants could challenge the ZHB's decision, *see* R.R. at 698a, 727a, the **Township therein committed** "**to issue a zoning permit** to allow a single[-]family dwelling located at [the Property]

14

to be used as a community-based group home for occupancy by no more than six (6) residents at one time, along with associated support staff." R.R. at 297a (emphasis added).

However, in entering into the Settlement Agreement, the Township disregarded the Zoning Officer's duty to grant zoning certificates in accordance with the Ordinance's clear language. Section 225-175.A of the Ordinance mandates:

> The Zoning Officer **shall** . . . [a]dminister [the Ordinance] in accordance with its literal terms and shall not have the power to permit . . . any use or change of use which does not conform with [the Ordinance]. . . . The Zoning Officer **shall** administer and enforce the provisions of [the Ordinance] in accordance with the provisions of [the Ordinance] and the [MPC].

Ord. § 225-175.A (R.R. at 226a) (emphasis added); *see In re Smith*, 231 A.3d 59 (Pa. Cmwlth. 2020); *Kohl v. New Sewickley Twp. Zoning Hearing Bd.*, 108 A.3d 961 (Pa. Cmwlth. 2015) (a zoning officer's ordinance interpretation is entitled to deference). In particular, Section 225-175.B of the Ordinance declares that "[t]he Zoning Officer **shall** . . . [i]ssue all certificates of zoning compliance and use registration certificates . . . ." Ord. § 225-175.B (R.R. at 226a) (emphasis added). Section 225-170.A of the Ordinance directs that a zoning certificate represents "that the proposed use of the building, structure[,] or land conforms to the requirements of [the Ordinance]." Ord. § 225-170.A (R.R. at 223a). To that end, "[t]he Zoning Officer **shall** . . . [c]onduct inspections of buildings, structures[,] and uses of land to determine compliance with the terms of [the Ordinance] and make and maintain records thereof." Section 225-175.C of the Ordinance, Ord. § 225-175.C (R.R. at 226a) (emphasis added).

Section 225-170.C of the Ordinance further provides, in relevant part:

> No zoning certificate and occupancy permit shall be issued until all erection, construction[,] or alteration has been

15

> completed and the use established, inspected[,] and approved by the Zoning Officer. No such certificate shall be issued for a proposed change in use until such change has been established and has been inspected and approved by the Zoning Officer.

Ord. § 225-170.C (R.R. at 224a). Importantly, Section 225-218 of the Ordinance specifies that the term "shall" "[i]ndicates that an action is required or prohibited." Ord. § 225-118 (R.R. at 289a).

The Zoning Officer testified at the October 8, 2020 ZHB hearing that he has been the Township's Zoning Officer for 21 years, and he is familiar with his duties under the Ordinance, particularly his responsibility to inspect properties and ensure that a proposed use conforms with the Ordinance, and to issue notices for violations. *See* R.R. at 64a-65a, 67a-70a, 77a-79a. The Zoning Officer acknowledged that only single-family residences are permitted in the Township's R-1 Zoning District, and group care facilities like the one Scioto proposed are not a permitted use by right or by conditional use therein. *See* R.R. at 75a-77a. The Zoning Officer further admitted that Scioto's proposed use does not comply with the Ordinance. *See* R.R. at 71a-73a. Nevertheless, the Zoning Officer issued the Zoning Certificate to Scioto on July 30, 2020, "at the instruction of [the] Township Solicitor[,]" R.R. at 69a, pursuant to the Settlement Agreement, as "[i]t falls under the auspices of the [FHAA]." R.R. at 66a; *see also* R.R. at 65a, 70a. By doing so, the Zoning Officer, at the Township Solicitor's direction, acted contrary to the Zoning Ordinance's clear language.

The Ordinance in this case authorizes the Board to amend the Ordinance if certain procedural steps are taken. Sections 225-186.E and 225-199 of the Ordinance declare that land use ordinance amendments are legislative acts that fall under the Board's (not the ZHB's) jurisdiction and, to be valid, they must be proceeded by Planning Commission approval, public notice, public hearing, and

public vote. *See* Ord. §§ 225-186.E, 225-199 - 225-203 (R.R. at 233a, 236a-238a); *see also* Section 609 of the MPC, 53 P.S. § 10609 (relating to zoning ordinance amendment enactments).

Section 225-180.A.(4) of the Ordinance also allows the ZHB to grant use variances when physical circumstances or conditions peculiar to a particular property present an unnecessary hardship; there is no possibility that the property can be developed in strict conformity with the Ordinance and a variance will enable reasonable use thereof; the property owner has not created the circumstances; a variance will not alter the neighborhood's essential character, substantially impair the use of adjacent properties, or be a detriment to the public welfare; and it represents the minimum variance necessary to afford relief. *See* Ord. § 225-180.A.(4) (R.R. at 182a); *see also* Section 910.2 of the MPC, 53 P.S. § 10910.2 (relating to zoning hearing board variance approval).[23]

Based on the record before this Court, the Township treated the Settlement Agreement as a foregone conclusion.[24] The Township and the ZHB take the position that the Zoning Officer and the ZHB had no choice but to grant the 2020 Application simply because Section 225-218 of the Ordinance references the FHAA. However, the statement in Section 225-218 of the Ordinance that "[n]othing in [Ordinance Chapter 225 - Zoning] is intended or shall be interpreted, enforced or administered in any means or manner inconsistent with or conflicting with the [FHAA,]" Ord. § 225-218 (R.R. at 276a), articulates that the ZHB will not discriminate against disabled persons in violation of the FHAA. That language does

---

[23] Section 910.2 of the MPC was added by Section 89 of the Act of December 21, 1988, P.L. 1329. A zoning hearing board's failure to make findings regarding each of an ordinance's variance criteria is reversible error. *See Coyle v. City of Lebanon Zoning Hearing Bd.*, 135 A.3d 240 (Pa. Cmwlth. 2016).

[24] Even if the ZHB was authorized to adopt the Settlement Agreement, it did not expressly do so.

17

not require the ZHB to grant every zoning application filed by or for disabled persons regardless of whether doing so comports with the Ordinance. Congress did not intend the FHAA as "affirmative action by which handicapped persons would have a greater opportunity than nonhandicapped persons. . . . Congress only prescribed an equal opportunity." *Bryant Woods Inn, Inc. v. Howard Cnty.*, 124 F.3d 597, 604 (4th Cir. 1997) (citation omitted).[25]

Nevertheless, the Township impermissibly bypassed the Board's legislative power and granted an Ordinance amendment, and/or disregarded the ZHB's variance process, by allowing Scioto to have six unrelated persons reside at the Property when other property owners are limited to three. Scioto, the Township, and the ZHB have not put forth any legal authority that allows the Settlement Agreement to circumvent the Ordinance or the MPC.

Historically, land use dispute settlements that represent significant ordinance changes (to zoning districts, in particular,) are typically subject to court approval.

---

[25] [W]hile decisions of the [U.S.] Supreme Court interpreting federal statutes are binding on this Court, the same is not true of decisions by the lower federal courts. *See Krentz v. Consol. Rail Corp.*, . . . 910 A.2d 20, 33 n.15 ([Pa.] 2006) ("The decisions of the [U.S.] Supreme Court interpreting federal statutes are binding on this Court."); *Hall v. Pa. Bd. of Prob. & Parole*, . . . 851 A.2d 859 . . . ([Pa.] 2004). This does not mean we are compelled to ignore on-point Third Circuit [court] decisions or, for that matter, decisions of any federal court of appeals, interpreting a federal statute. To the contrary, such decisions in factually similar cases with persuasive legal analysis may inform our disposition of the matter before us. *In re Stevenson*, . . . 40 A.3d 1212, 1221 ([Pa.] 2012) ("The Commonwealth Court was not incorrect in observing that the pronouncements of the lower federal courts have only persuasive, not binding, effect on the courts of this Commonwealth.").

*Cole v. Pa. Dep't of Env't Prot.*, 257 A.3d 805, 813 (Pa. Cmwlth. 2021). This Court relies on the federal cases cited herein to interpret the FHAA and its impact accordingly.

18

> This Court has long held that court-approved settlements of zoning issues are lawful.[26] *See Miravich . . .* ; *Yaracs v. Summit Acad*[.], 845 A.2d 203, 209 n.6 (Pa. Cmwlth. 2004); *Boeing Co*[.] *v. Zoning Hearing B*[d.], 822 A.2d 153, 161 (Pa. Cmwlth. 2003); *Summit T*[wp.] *Taxpayers Ass*[']*n . . .* ; *Monroeville Borough v. Al Monzo Constr*[.] *Co.*, . . . 289 A.2d 496 ([Pa. Cmwlth.] 1972).

*Baribault*, 236 A.3d at 122 n.12. This Court has explained that court-approved settlements are "distinct from zoning hearing board variances; even though a judicial settlement may result in a departure from the ordained zoning pattern, that kind of departure falls within the court's jurisdiction, not the [zoning hearing] board's jurisdiction." *Summit Twp. Taxpayers Ass'n*, 411 A.2d at 1266; *see also Monroeville Borough*.

Scioto, ReMed, and the Township executed the Settlement Agreement, and asked the District Court to discontinue the civil action. The District Court referenced the Settlement Agreement in its February 21, 2020 memorandum and order, *see* R.R. at 724a, but did not review the Settlement Agreement, incorporate it, or expressly approve it. In fact, the District Court expressly recognized Appellants' right to challenge it.

Because the Settlement Agreement memorialized the Township's concession to grant the Zoning Certificate apparently without regard for the Township's R-1 Zoning District restrictions and the Ordinance's other specifications, including the Zoning Officer's review and inspection, and/or the Ordinance's amendment and variance requirements, the Township via the Settlement Agreement bypassed or deviated from the Ordinance without court

---

[26] "The courts have jurisdiction over the municipality and landowner and therefore may approve settlement agreements." *Miravich*, 54 A.3d at 112.

19

approval. Under such circumstances, this Court is constrained to conclude that the Settlement Agreement was not valid and legally unenforceable.

## 2. Zoning Certificate

Appellants also argue that the Zoning Officer erred by issuing the Zoning Certificate for the proposed use at the Property. Specifically, Appellants contend that the Ordinance does not expressly permit the proposed use at the Property, the proposed use is not a reasonable accommodation required by federal law, and federal law does not otherwise require the Township to permit the proposed use.

The Township and the ZHB respond that, even if the Settlement Agreement was not valid and enforceable, the 2020 Application stood on its merits and Appellants failed to prove that the requested accommodation was not reasonable. Scioto also argues that the record and applicable law supported the ZHB's conclusion that the Zoning Officer properly issued the Zoning Certificate for the proposed use at the Property.

Despite that an invalid Settlement Agreement was the impetus for the ZHB's December 10, 2020 decision, **if** the ZHB's decision approving the 2020 Application met all of the necessary requirements, it could nevertheless stand on its merits without reliance on the Settlement Agreement.

Preliminarily,

> [l]and-use restrictions designate "districts in which only compatible uses are allowed and incompatible uses are excluded." D. Mandelker, Land Use Law § 4.16, pp. 113-114 (3d ed. 1993) (hereinafter Mandelker). These restrictions typically categorize uses as single-family residential, multiple-family residential, commercial, or industrial. *See, e.g.*, 1 E. Ziegler, Jr., Rathkopf's The Law of Zoning and Planning § 8.01, pp. 8-2 to 8-3 (4th ed.

20

1995); Mandelker § 1.03, p. 4; 1 E. Yokley, Zoning Law and Practice § 7-2, p. 252 (4th ed.1978).

Land use restrictions aim to prevent problems caused by the "pig in the parlor instead of the barnyard." *Vill*[.] *of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 388 . . . (1926). In particular, reserving land for single-family residences preserves the character of neighborhoods, securing "zones where family values, youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people." *Vill*[.] *of Belle Terre v. Boraas*, 416 U.S. 1, 9 . . . (1974); *see also Moore v. E*[.] *Cleveland*, 431 U.S. 494, 521 . . . (1977) (Burger, C.J., dissenting) (purpose of East Cleveland's single-family zoning ordinance "is the traditional one of preserving certain areas as family residential communities"). To limit land use to single-family residences, a municipality must define the term "family"; thus family composition rules are an essential component of single-family residential use restrictions.

*City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 732-33 (1995).

In the instant matter, Section 225-218 of the Ordinance defines "family," in relevant part, as "[e]ither an individual or two or more persons related by blood or marriage or adoption . . . or a group of not more than three person[s] who need not be related, who are living together in a single dwelling unit and maintaining a common household[,]" consistent with the FHAA. Ord. § 225-218 (R.R. at 276a).

Section 3604(f)(2) of the FHAA, *inter alia*, makes it unlawful to discriminate in the sale or rental of a dwelling because of an intended resident's handicap.[27] It is well settled that

---

[27] "Handicap" is defined in Section 3602(h) of the FHAA as "a physical or mental impairment which substantially limits one or more of such person's major life activities, [] a record of having such an impairment, or [] being regarded as having such an impairment[.]" 42 U.S.C. § 3602(h). Section 100.201(a)(2) of the Code of Federal Regulations further defines "handicap" to include physical and mental impairment, including "[a]ny mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 24 C.F.R. § 100.201(a)(2). The parties do not dispute that "[b]rain-injured persons, such as the residents and would-be residents of the [Property], unquestionably qualify as

21

"[t]he purpose of the [FHAA] [is] to prohibit discrimination in the national housing market for handicapped individuals," *Groome Res. Ltd. v. Par. of Jefferson*, 234 F.3d 192, 200-01 (5th Cir. 2000) (footnote omitted), thereby bringing handicapped individuals within the [FHAA's] "broad and inclusive compass" to eliminate housing discrimination in the U[.]S[.], *City of Edmonds . . .* , 514 U.S. [at] 731 . . . . Similarly, the ADA - as well as the Rehabilitation Act, which is "interpreted *in pari materia*" with the ADA - "is a broad mandate of comprehensive character and sweeping purpose intended to eliminate discrimination against disabled individuals . . . and to integrate them into the economic and social mainstream of American life." *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011) (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 . . . (2001)) (internal quotation marks omitted).

*Oxford House, Inc. v. Browning*, 266 F. Supp. 3d 896, 907 (M.D. La. 2017). Accordingly, "the language of the [FHAA] is 'broad and inclusive' and must be given a 'generous construction.' *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209, 212 . . . (1972); *see also City of Edmonds . . . .*" *Samaritan Inns, Inc. v. D.C.*, 114 F.3d 1227, 1234 (D.C. Cir. 1997).

"Section 3604(f)(3)(B) [of the FHAA] prohibits the enforcement of zoning ordinances and local housing policies in a manner that denies people with disabilities access to housing on par with that of those who are not disabled[.]"[28]

---

handicapped persons under the [FHAA]." *ReMed Recovery Care Ctrs. v. Twp. of Willistown, Chester Cnty., Pa.*, 36 F. Supp. 2d 676, 683 (E.D. Pa. 1999); *see also* R.R. at 973a.

[28] Congress has not yet evinced an intent to occupy the field of municipal zoning, but it has evinced its intent that the FHAA preempt[s] state laws to the extent that any state laws conflict with the FHAA. Section 3615 of the [FHAA] provides . . . :

> Nothing in this subchapter shall be construed to invalidate or limit any law of a [s]tate or political subdivision of a [s]tate, or of any other jurisdiction in which this subchapter shall be effective, that grants, guarantees, or protects the same rights as are granted by this subchapter; but any law of a [s]tate, a political subdivision, or other such

22

*ReMed Recovery Care Ctrs. v. Twp. of Willistown, Chester Cnty., Pa.*, 36 F. Supp. 2d 676, 683 (E.D. Pa. 1999). In particular, zoning ordinances that define who makes up a family and that limit the number of unrelated persons who may occupy a house in a single-family zoning district are subject to the FHAA's anti-discrimination provisions. *See City of Edmonds*; *see also ReMed Recovery Care Ctrs*.

"There are three ways to show discrimination under the [FHAA]: (1) intentional discrimination[;] (2) discriminatory impact[;] and (3) refusal to make a reasonable accommodation." *State ex rel. Bruskewitz v. City of Madison*, 635 N.W.2d 797, 804 (Wis. 2001). The instant appeal is from the ZHB's decision granting Scioto's accommodation request.

"Section 3604(f)(3)(B) [of the FHAA] . . . places upon a municipality an 'affirmative duty' to make reasonable accommodations." *ReMed Recovery Care Ctrs.*, 36 F. Supp. 2d at 683 (quoting *Hovsons, Inc. v. Twp. of Brick*, 89 F.3d 1096, 1104 (3d Cir. 1996)). Specifically, "[u]nder [the FHAA], municipalities are required to make 'reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford such person equal opportunity to

---

jurisdiction that purports to require or permit any action that would be a discriminatory housing practice under this subchapter shall to that extent be invalid.

42 U.S.C. § 3615.

*Oconomowoc Residential Programs, Inc. v. City of Greenfield*, 23 F. Supp. 2d 941, 952 (E.D. Wis. 1998). Federal courts have concluded that "the FHAA, explicitly . . . , and the ADA, implicitly, express Congress' intent that the Acts protecting the disabled preempt any conflicting laws[.]" *Id*. Accordingly, "[b]oth the FHAA and the ADA apply to zoning regulations, practices, or decisions that subject persons with handicaps or disabilities to discrimination based on their handicap or disability." *State ex rel. Bruskewitz v. City of Madison*, 635 N.W. 2d 797, 803 (Wis. 2001).

Importantly, Section 3604(f)(9) of the FHAA declares: "Nothing in this subsection requires that a dwelling be made available to an individual whose tenancy would constitute a direct threat to the health or safety of other individuals or whose tenancy would result in substantial physical damage to the property of others." 42 U.S.C. § 3604(f)(9). However, "[t]here is not a scintilla of evidence that disabled people present a public health or safety threat to other residents of a community." *Oconomowoc Residential Programs*, 23 F. Supp. 2d at 954.

23

use and enjoy a dwelling.'  42 U.S.C. § 3604(f)(3)(B)." *Judy B. v. Borough of Tioga*, 889 F. Supp. 792, 799 (M.D. Pa. 1995).  Thus,

> the plain language of the [FHAA] requires [zoning hearing boards and the courts[29]] to focus on . . . whether the requested accommodation is "(1) reasonable and (2) necessary to (3) afford handicapped persons an equal opportunity to use and enjoy housing." *Bryant Woods Inn*, 124 F.3d at 603.

*Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Twp. of Scotch Plains*, 284 F.3d 442, 457 (3d Cir. 2002); *see also Kennedy House, Inc. v. Phila. Comm'n on Hum. Rels.*, 143 A.3d 476 (Pa. Cmwlth. 2016).

The Fourth Circuit Court of Appeals has provided the most comprehensive analysis of the three accommodation factors, as follows:

> In determining whether the ["]reasonableness["] requirement has been met, a court may consider as factors the extent to which the accommodation would undermine the legitimate purposes and effects of existing zoning regulations and the benefits that the accommodation would provide to the handicapped.  It may also consider whether alternatives exist to accomplish the benefits more efficiently.  And in measuring the effects of an accommodation, the court may look not only to its functional and administrative aspects, but also to its costs.  "Reasonable accommodations" do not require accommodations which impose "undue financial and administrative burdens," [*Se. Cmty. Coll. v.*] *Davis*, 442 U.S. [397,] 412 . . . [(1979)] or "changes, adjustments, or modifications to existing programs that would be substantial, or that would constitute fundamental alterations in the nature of the program," *Alexander v. Choate*, 469 U.S. 287, 301 n.20 . . . (1985) (internal quotations omitted).  Thus, for example, even though a prohibition of pets in apartments is common, facially neutral, and indeed reasonable, the FHA[A] requires a

---

[29] "FHAA . . . plaintiffs have the burden of seeking an accommodation before seeking relief in a judicial forum." *Oconomowoc Residential Programs*, 23 F. Supp. 2d at 955.  Requesting a zoning exception under the Ordinance meets this requirement.  *See id*.

24

relaxation of it to accommodate a hearing dog for a deaf person because such an accommodation does not unduly burden or fundamentally alter the nature of the apartment complex. *See Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir. 1995).

The "necessary" element - the FHA[A] provision mandating reasonable accommodations which are *necessary* to afford an equal opportunity - requires the demonstration of a direct linkage between the proposed accommodation and the "equal opportunity" to be provided to the handicapped person. This requirement has attributes of a causation requirement. And if the proposed accommodation provides no direct amelioration of a disability's effect, it cannot be said to be "necessary." *See Bronk*, 54 F.3d at 429.

And finally, the "equal opportunity" requirement mandates not only the level of benefit that must be sought by a reasonable accommodation but also provides a limitation on what is required. **The FHA**[**A**] **does not require accommodations that increase a benefit to a handicapped person above that provided to a nonhandicapped person with respect to matters unrelated to the handicap**. As the Court in *Davis* noted, **the requirement of even-handed treatment of handicapped persons does not include affirmative action by which handicapped persons would have a greater opportunity than nonhandicapped persons**. *Davis*, 442 U.S. at 410-11 . . . [.] Congress only prescribed an equal opportunity. *See* 42 U.S.C. § 3604(f)(3)(B).

*Bryant Woods Inn*, 124 F.3d at 604 (emphasis added).

In *Kennedy House*, this Court agreed:

Federal courts have interpreted the necessary requirement of the FHA[A] as "meaning that, without the accommodation, the [complainant] will be denied an equal opportunity to obtain the housing of her choice." *Wis*[.] *Cmty. Servs.* [*v. City of Milwaukee*], 465 F.3d [737,] 749 [(7th Cir. 2006)]; *see also Smith & Lee Assoc*[*s*]*., Inc. v. City of Taylor, Mich.*, 102 F.3d 781, 795 (6th Cir. 1996) (holding that complainants "must show that, but for the accommodation, they likely will be denied an equal

opportunity to enjoy the housing of their choice"). In other words, in order to satisfy the necessary element of the FHA[A], a complainant must demonstrate "a direct linkage between the proposed accommodation and the 'equal opportunity' to be provided. . . . " *Bryant Woods Inn*, 124 F.3d at 604. "[I]f the proposed accommodation provides no direct amelioration of a disability's effect, it cannot be said to be 'necessary.'" *Id.*

*Kennedy House*, 143 A.3d at 486 (emphasis omitted).

The Third Circuit Court of Appeals has further expounded:

The [FHAA] applies "when [] accommodations may be necessary," but "may" does not change our analysis. 42 U.S.C. § 3604(f)(3)(B). . . . In this statute, "may" signals not a low probability of necessity, but rather the conditional mood. The condition, when met, makes the accommodation necessary, as in the phrase "as the case may be." "[W]hen such accommodations may be necessary" in [Section] 3604(f)(3)(B) [of the FHAA] is another way of saying "whenever they are necessary" or "as far as they are necessary."

In short, **the [FHAA's] necessity element requires that an accommodation be essential**, **not just preferable**.

. . . .

Here, the [FHAA] tells us what to look for: an "accommodation[] . . . [that] may be necessary to afford [the disabled] person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). The text pegs the necessity to the goal of providing the particular tenant with equal housing opportunity. "[T]he object of the [FHAA's] necessity requirement is a level playing field in housing for the disabled." *Cinnamon Hills Youth Crisis Ctr. v. St. George City*, 685 F.3d 917, 923 (10th Cir. 2012).

*Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 107 (3d Cir. 2018) (emphasis added). The *Vorchheimer* Court added that it is proper to consider reasonable alternatives when assessing an accommodation's necessity.[30, 31] *See id.*

The U.S. District Court for the Western District of Pennsylvania recognized:

> In case after case, [lower federal] courts have concluded that the FHA[A] has been violated where municipalities have attempted to prevent or restrict persons with disabilities from living in the single family-zoned homes of their choice, even when the number of residents exceeds the number of unrelated people permitted to live together under the applicable zoning ordinances.

*Dr. Gertrude A. Barber Ctr., Inc. v. Peters Twp.*, 273 F. Supp. 2d 643, 651 (W.D. Pa. 2003). Clearly, however, "[t]he reasonable accommodation inquiry is highly fact-specific, requiring a case-by-case determination." *Hovsons, Inc.*, 89 F.3d at 1104 (quoting *United States v. Cal. Mobile Home Park Mgmt. Co.*, 29 F.3d 1413,

---

[30] For example,

> [g]iving the paraplegic a first-floor apartment is one way to give him access and thus equal opportunity to use his apartment. But an elevator would work too. That alternative would give him access to every apartment, so a first-floor apartment would no longer be necessary. The landlord has to offer at least one of the accommodations, but not both. If she does offer one of them, she has not "*refus*[*ed*] to make reasonable accommodations . . . [that] may be necessary to afford [the tenant] equal [housing] opportunity." 42 U.S.C. § 3604(f)(3)(B) (emphasis added). In that vein, food is necessary to survive. But if soup and salad are on offer, a sandwich is not necessary. Gauging necessity, then, requires considering whether another alternative on offer satisfies the goal of equal housing opportunity for that tenant.

*Vorchheimer*, 903 F.3d at 108.

[31] The parties' reliance on the *Lapid-Laurel* Court's statement that one seeking an accommodation must show that it was necessary either for the facility's financial viability or would serve a therapeutic purpose is misplaced here. The *Lapid-Laurel* Court limited such conclusion to cases in which the size of a building and/or expansion are at issue, which was the case for the 2018 Application, but not the 2020 Application.

27

1418 (9th Cir. 1994); *see also Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002) ("Whether a requested accommodation is reasonable . . . is a highly fact-specific inquiry and requires balancing the needs of the parties."); *Wis. Cmty. Servs*.

> Finally, this Court has ruled that accommodation requests
>
> under the FHAA are analyzed using the burden-shifting framework developed by the Third Circuit in *Lapid-Laurel*: "[T]he [applicant] bears the initial burden of showing that the requested accommodation is necessary to afford handicapped persons an equal opportunity to use and enjoy a dwelling, at which point the burden shifts to the [complainant] to show that the requested accommodation is unreasonable." [*Id*.] at 457.

*Carunchio v. Swarthmore Borough Council*, 237 A.3d 1183, 1197 (Pa. Cmwlth. 2020). Accordingly, in this matter, Scioto had the burden of proving that the accommodation was necessary to afford the residents an equal opportunity and, if Scioto satisfied that burden, Appellants had to prove that the accommodation was not reasonable.

With this background in mind, this Court examines whether the Township erred by granting Scioto an accommodation under the FHAA and issuing the Zoning Certificate for the proposed use at the Property.

Relative to the 2020 Application, the parties stipulated that the proposed use at the Property will be a medically supported living facility for up to six brain-injured adult residents who have experienced a breakdown in their family and/or other support systems, who need daily assistance, and who cannot return to a traditional family setting. *See* R.R. at 317a. "Due to their disabilities, without the assistance of staff [] and other resources provided by the medical support living program, the residents would not be able to live together at the Property." R.R. at 318a. The residents will be supported by 2 to 3 staff working 8:00 a.m. to 4:00 p.m.,

and 4:00 p.m. to 12:00 a.m. day shifts, and 1 to 2 staff working 12:00 a.m. to 8:00 a.m. night shifts, that overlap approximately 20 minutes at shift changes. *See id.* ReMed anticipates there will be two minivans kept at the Property to transport residents to activities and appointments, and families will visit the residents during visiting hours (i.e., weekdays from 1:00 p.m. to 3:00 p.m., and weekends from 12:00 p.m. to 4:00 p.m.). *See id.* The parties "agree that the six residents [will] maintain[] a common household and a single-dwelling unit." R.R. at 973a.

The ZHB also heard additional testimony. The Zoning Officer testified that the proposed use's description is more like a group care facility than a single-family residence. *See* R.R. at 74a-75a. The Zoning Officer was not aware of any legal requirement or other reason why persons with brain injuries would need to live in groups of six or more, and he had no financial information about the operation of the proposed use. *See* R.R. at 75a-76a.

Dr. Tracy testified that "the whole purpose and idea of residential treatment is to recreate family dynamics and retrain the individual to be able to operate within family systems and small living communities." R.R. at 98a, 107a. Dr. Tracy explained that theorists suggest that the ideal number of residents in these residential facilities should be close to what a typical family structure would look like,[32] which is generally agreed upon as being three or four. *See* R.R. at 98a-99a, 103a, 106a. Dr. Tracy explained that two residents would be too few, and five or six residents plus staff would be too many, because those numbers do not represent a typical family dynamic. *See* R.R. at 100a-101a, 103a, 106a. Dr. Tracy opined that having more than three or four residents would reduce the program's power

_____

[32] Dr. Tracy did not know the Township's family demographic data. *See* R.R. at 108a. However, this Court has declared that "whether other single-family homes in the [municipality] are inhabited only by an average of [a number of] people is irrelevant, because, [if] the [p]roperty's residents meet the definition of family under . . . the [o]rdinance, there is no limit on how many individuals can reside at the [p]roperty." *Carunchio*, 237 A.3d at 1203.

"[b]ecause family dynamics, interpersonal dynamics, group dynamics, all those kinds of things that feed the therapy process are diminished." R.R. at 101a; *see also* R.R. at 100a, 110a-111a. Dr. Tracy added that the severity of the residents' conditions also has "a lot to do with how many folks you're going to have in the facility." R.R. at 101a. Dr. Tracy acknowledged that five or six residents with "very low severity" may be manageable in a residential setting and might, in some situations, be better than two or three. R.R. at 102a; *see also* R.R. at 107a, 109a-110a. Dr. Tracy admitted that there is not a therapeutic need for a residential facility to exceed three or four residents.[33] *See* R.R. at 102a.

Appellant Murray testified that the 2020 Application did not alleviate his prior concerns regarding the affect additional traffic at the Property with residents, staff, and visitors may have on the surrounding area, particularly when the Property's driveway is narrow and is located on a hill near a bend, and the shift changes would occur when the school buses are operating. *See* R.R. at 113a-115a, 121a-124a, 127a. Appellant Murray was not aware of the Township or anyone having conducted a traffic study of the area. *See* R.R. at 125a. Appellant Murray also expressed that approving the accommodation would change the makeup of the

---

[33] Notably, relative to the 2018 Application, even Lesako did not testify that eight residents are *necessary*. Rather, Lesako indicated that "[t]ypically, there are eight residents in these facilities." R.R. at 340a; *see also* R.R. at 351a. She described that the model is intended to create a community environment. *See* R.R. at 340a. Notably, when asked why eight patients is necessary, Lesako replied:

> [W]hat we found is eight patients really works best for people with traumatic brain injuries. . . . Ours is really for the clinical need for that feeling of community within community . . . . So [] you have people -- just like in your own family, people that get along better than don't get along. You know, they develop friend groups. And having eight individuals give more opportunity for that than having four. If you have four, two and two can turn against each other.

R.R. at 387a. The ZHB found Dr. Tracy's testimony more credible than Lesako's. *See* R.R. at 614a.

30

community, since the proposed use will operate as more of a facility than a family residence. *See* R.R. at 114a, 116a, 127a.

Based upon all the evidence, the ZHB found that the Zoning Officer's decision to issue the Zoning Certificate "was guided both by his understanding of the Settlement Agreement . . . and his opinion that the [2020 A]pplication falls under the auspices of the [FHAA], which is incorporated into the [Ordinance] . . . ." ZHB Dec. at 4 (R.R. at 850a). In addition, the ZHB made a finding that Dr. Tracy "conceded that the optimal . . . number of residents may fluctuate depending on the severity of the residents['] injuries, and that six residents might be optimal . . . ." *Id.* The ZHB further found that, although the 2020 Application alleviated some of Appellant Murray's prior expansion concerns, he still had concerns about the number of vehicles that would travel to and from the Property. *See id.* The ZHB finally found that "the proposed use is compliant with the [Ordinance] due to the changed circumstances and the lack of an addition to the existing [Dwelling] on the Property." ZHB Dec. at 5 (R.R. at 851a).

The ZHB concluded that, "[p]ursuant to the FHAA, discrimination includes the refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person [an] equal opportunity to use and enjoy a dwelling. 42 U.S.C.[] § 3604(f)(3)(B)." ZHB Dec. at 6-7 (R.R. at 852a-853a). In addition, the ZHB determined:

> 10. Under the FHAA, it is the defendant's burden to show that the requested accommodation is not reasonable. *Lapid-Laurel* . . . .
>
> 11. To establish that an accommodation proposed to satisfy the [FHAA] is *not* reasonable, one must establish that the proposed accommodation would: (1) impose undue financial and administrative burden; (2) impose undue hardship on the [Township]; or (3) would require a fundamental alteration in the nature of [the Township's] zoning program. *Re[M]ed Recovery Care Ctrs.* . . . .

31

12. Appellants did not establish that the proposed accommodation would impose undue financial or administrative burden, impose undue hardship on the [Township], or would require a fundamental alteration in the nature of the Township's zoning program.

13. Appellants have presented expert testimony through Dr. Tracy that, depending on the severity of the injuries, it could be medically necessary for Scioto to have six residents reside at the Property.

14. The Zoning Officer's determination was reasonable, necessary, and designed to ensure the Township's compliance with federal law.

15. The Zoning Officer's decision to approve the [2020 A]pplication (which reduced the number of permitted occupants from eight to six and did not include an enlargement of the existing residential [D]welling or the parking area on the Property), was a reasonable and necessary accommodation by the Township.

16. . . . [T]his decision shall not be interpreted as a blanket authorization for four or more unrelated individuals to reside in a [single]-[f]amily [d]welling in all circumstances.

ZHB Dec. at 7 (R.R. at 853a).

The ZHB clearly understood that, "[p]ursuant to the FHAA, **discrimination includes a refusal to make reasonable accommodations** in rules, policies, practices, or services, **when such accommodations may be necessary** to afford such person [an] equal opportunity to use and enjoy a dwelling[,]" ZHB Dec. at 7 (R.R. at 853a) (emphasis added), and ultimately concluded that the Zoning Officer's issuance of the Zoning Certificate was **reasonable and necessary**. *See id.* However, the ZHB's analysis focused only on reasonableness. Because Scioto presented no evidence regarding whether the accommodation was necessary, the ZHB could not and did not make any finding that the accommodation was *necessary*

32

to afford the proposed residents *an equal opportunity*.[34]  Dr. Tracy's statement that "*it could be* medically necessary for Scioto to have six residents reside at the Property," *id.* (emphasis added), was hardly "such relevant evidence that a reasonable person would accept as adequate to support the conclusion reached."[35] *Friends of Lackawanna v. Dunmore Borough Zoning Hearing Bd.*, 186 A.3d 525, 531 n.6 (Pa. Cmwlth. 2018).  Moreover, "[w]here substantial evidence does not support the [zoning hearing] board's findings, the [zoning hearing] board abused its discretion and reversal is warranted."  *Hafner v. Zoning Hearing Bd. of Allen Twp.*, 974 A.2d 1204, 1209 n.1 (Pa. Cmwlth. 2009).

Because Scioto did not satisfy its initial burden of showing "that the requested accommodation is necessary to afford handicapped persons an equal opportunity to use and enjoy a dwelling," the burden never shifted to Appellants to demonstrate that the accommodation was not reasonable.  *Carunchio*, 237 A.3d at 1197 (quoting *Lapid-Laurel*, 284 F.3d at 457).  Accordingly, the ZHB erred by concluding that the Zoning Officer properly issued the Zoning Certificate for the proposed use at the Property.

---

[34] Appellants' stipulation that "[d]ue to their disability, without the assistance of staff personnel and other resources provided by the medical supported living program, the residents would not be able to live together at the Property[,]" R.R. at 318a, did not alone satisfy Scioto's burden to prove necessity.  "[This C]ourt will not extend the language [of a stipulation] by implication *or enlarge the meaning of terms* beyond what is expressed."  *Gravel Hill Enters., Inc. v. Lower Mount Bethel Twp. Zoning Hearing Bd.*, 172 A.3d 754, 760 (Pa. Cmwlth. 2017) (quoting *Cobbs v. Allied Chem. Corp.*, 661 A.2d 1375, 1377 (Pa. Super. 1995) (emphasis added)).

[35] Notably, the ZHB made findings on Scioto's evidence in its September 2018 decision (reviewing the 2018 Application), which was admitted into the record for the 2020 Application proceeding, and expressly incorporated into the December 2020 decision.  *See* ZHB Dec. at 3 (R.R. at 849a); *see also* R.R. at 610a-614a.  However, since the ZHB's September 2018 decision declared that Scioto failed to demonstrate that the proposed use complied with the Ordinance's definition of "family," and failed to meet its burden of proving that the requested accommodation was necessary to afford eight residents an equal opportunity to use and enjoy a dwelling in the R-1 Zoning District, the ZHB's September 2018 decision does not plug the gaps left here, particularly where the ZHB found Dr. Tracy's testimony more credible than Lesako's testimony.

**Conclusion**

Based on the foregoing, the trial court's order is reversed.


_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Patrick Murray, Allison Murray,     :
and Robert Neely,     :
          Appellants     :
     :
     v.     :
     :
Shaler Township Zoning Hearing     :
Board, Township of Shaler and     :    No. 966 C.D. 2021
Scioto Properties SP-16 LLC     :

## O R D E R

AND NOW, this 14th day of March, 2022, the Allegheny County Common Pleas Court's August 11, 2021 order is reversed.

_____
ANNE E. COVEY, Judge